**THE ED RACHAL FOUNDATION and Paul Altheide, Petitioners,**

v.

**Claude D'UNGER, Respondent.**

No. 03–1101.

Supreme Court of Texas.

April 21, 2006.

Chester J. Makowski, Nathan Wesely, Myra K. Morris, Ralph F. Meyer, Royston, Rayzor, Vickery & Williams, L.L.P., Corpus Christi, for Petitioner.

Andrew M. Greenwell, James R. Harris, Harris & Greenwell, L.L.P., Corpus Christi, for Respondent.

PER CURIAM.

Twice in recent years this Court has rejected invitations to create a common-law cause of action for all whistleblowers, noting each time that a general claim would eclipse the Legislature's decision to enact a number of narrowly-tailored whistleblower statutes instead. *See Austin v. HealthTrust, Inc.-The Hosp. Co.*, 967 S.W.2d 400, 401–02 (Tex.1998); *Winters v. Houston Chronicle Publ'g Co.*, 795 S.W.2d 723, 723 (Tex.1990). For the same reason, we reach the same result today.

Claude D'Unger was an officer and director of the Ed Rachal Foundation, a charitable organization that owns a ranch in Webb County used for wildlife and farming research studies. The ranch covers more than 100 square miles, including five miles along the Rio Grande. Due to its location, migrants from Mexico frequently cross the ranch on foot.

D'Unger became concerned that the ranch's foreman, Ed DuBose, was harassing migrants, and reported his concerns to Paul Altheide, the Foundation's chief executive officer. According to D'Unger, Al-

theide told him "to drop it," which he took as an instruction not to report DuBose's activities to any law enforcement officials.

On September 17, 1997, DuBose apprehended three teenage Mexican nationals at the ranch, handcuffed them, and turned them over to Border Patrol agents. When D'Unger saw a ranch report of the incident, he contacted Border Patrol agents, who told him they had no knowledge or record of the incident. Concerned that a crime might have been committed, D'Unger subsequently contacted a congressman, two sheriffs, the Texas Attorney General's office, a senator, the IRS, a district judge, and the Mexican Consulate about the matter. When Altheide learned of D'Unger's activities, he first suspended him, and then fired him when he refused to resign.

D'Unger sued the Foundation for breach of contract and wrongful termination, and Altheide for tortious interference. Shortly after he filed suit, the Border Patrol produced records under the Freedom of Information Act showing his concerns were unfounded—that DuBose had safely delivered the teenagers to Border Patrol custody the day he apprehended them. Nevertheless, a Nueces County jury later found for D'Unger on all his claims, and the trial court rendered judgment for $364,194.12 in lost wages and $193,001.00 in attorney's fees.

A unanimous court of appeals reversed the breach of contract and tortious interference claims. 117 S.W.3d at 357. In a cross-point, *see* TEX. R. APP. P. 53.3(c)(2), D'Unger challenges only the reversal of his contract claim, arguing that by agreeing to pay him a salary of $80,000 per year the Foundation bound itself to a contract of renewable one-year terms.

In *Midland Judicial District Community Supervision v. Jones,* we re-

jected the so-called "English rule" that hiring an employee at a stated sum per week, month, or year always constitutes a promise of definite employment for that term. *See* 92 S.W.3d 486, 487 (Tex.2002) (per curiam). Instead, we reiterated that employment is presumed to be at-will in Texas absent an unequivocal agreement to be bound for that term. *Id.* (citing *Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex.1998)). Standing alone, an agreement to pay at a stated rate is not enough; if it were, there would be very few at-will employees.

■ D'Unger's evidence established nothing more here. D'Unger's personal understanding of his contract, or annual renewals of it in the past, do not unequivocally indicate that the Foundation intended to be bound throughout that term. We agree with the court of appeals that there was no evidence to support D'Unger's breach of contract claim.

The court of appeals divided on D'Unger's sole remaining claim, with the majority affirming a judgment for wrongful termination. 117 S.W.3d at 361. We agree with the dissenting justice, and thus reverse.

■ D'Unger's wrongful termination claim is based on the narrow exception to at-will employment that we created in *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985). This exception makes it unlawful to terminate employees if the sole reason is their refusal to perform an illegal act. *Id.* at 735. While D'Unger argues that the defendants committed many illegal acts, the only one he points to as the sole reason for his termination is "that he was terminated because he was trying to find out what had happened to the [three] Mexican nationals." The court of appeals concluded there was evidence to support a wrongful-termination finding because the jury could have con-

cluded that Altheide's instructions to D'Unger were an attempt to include him "in a conspiracy to cover up criminal and illegal conduct involving any Mexican National on the Ranch." 117 S.W.3d at 361.

■ We disagree. *Sabine Pilot* protects employees who are asked to *commit* a crime, not those who are asked not to *report* one. If failing to report a crime were itself a crime, then almost all whistleblowers could claim the *Sabine Pilot* exception. The plaintiffs in both *Austin* and *Winters* claimed they had been terminated for reporting illegal activities, yet we held that *Sabine Pilot* applied to neither. *See Austin,* 967 S.W.2d at 403; *Winters,* 795 S.W.2d at 724.

■ Generally, failing to report a crime, like any other failure to act, is not a crime unless a specific law "provides that the omission is an offense or otherwise provides that he has a duty to perform the act." TEX. PEN. CODE § 6.01(c). While a few specific laws impose such duties, *see, e.g.,* TEX. FAM. CODE § 261.109 (criminalizing failure to report suspected child abuse), D'Unger points to no specific law that would criminalize his silence here. Like the various whistleblower statutes, specific criminal statutes requiring certain crimes to be reported would be unnecessary if every failure to report a crime were itself a crime.

■ The court of appeals erred in finding there was some evidence that D'Unger was asked to join a criminal conspiracy. Criminal responsibility as a conspirator requires proof of culpable acts made with an intent to assist in the commission of a crime before it occurs. *See* TEX. PENAL CODE §§ 7.02(a), 15.02. There is no evidence D'Unger was asked to participate in any impending criminal acts, or that he ever intended to do so.

The court of appeals also believed D'Unger stood in jeopardy of the crime of misprision of felony. That crime is committed by anyone who has "knowledge of the actual commission of a felony" and yet "conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States." 18 U.S.C. § 4. Although mere silence is generally not enough for conviction, we have noted that a literal reading of the statute and some actual convictions suggest that it might be. *See Duncan v. Bd. of Disciplinary Appeals,* 898 S.W.2d 759, 761 (Tex.1995). But the crime still requires "knowledge of the actual commission of a felony," while in this case D'Unger concedes that "he did not report a crime, because a crime did not occur." [1]

The jury was also instructed that D'Unger was wrongfully terminated if the sole reason for termination was his resistance to harassment intended to keep him from reporting a crime. But the only possible crimes related to this instruction are those criminalizing harassment or conspiracies to intimidate potential witnesses. *See* 18 U.S.C. § 1512; TEX. PENAL CODE § 36.05. Again, there was no evidence D'Unger was himself a witness or was asked to tamper with any witnesses.

Finally, D'Unger urges us to adopt what he calls a "corollary" to *Sabine Pilot* adopted by the Thirteenth Court of Appeals to protect employees who contact law-enforcement agencies to find out whether something they have been asked to do is illegal. *See Johnston v. Del Mar Distrib. Co.,* 776 S.W.2d 768, 771 (Tex. App.—Corpus Christi 1989, writ denied);

but see *Camunes v. Frontier Enterprises, Inc.,* 61 S.W.3d 579, 581 (Tex.App.-San Antonio 2001, pet. denied) (following Third and Fourteenth Courts of Appeals in rejecting *Johnston* ). But D'Unger testified only that he was trying to find out whether the actions *of others* were illegal, not whether *his* silence might be illegal. Even if this "corollary" correctly stated Texas law (an issue we do not reach), there is no evidence that D'Unger falls within it.[2]

We do not mean to suggest that D'Unger has done anything wrong; to the contrary, the very reason he does not fall within the *Sabine Pilot* exception is that he neither did nor was asked to do anything criminal. That exception would allow a whistleblower to state a claim if failing to blow the whistle would itself be a criminal act. But there is no evidence that was the case here.

Both employers and employees have civic and social obligations to report suspected crimes; "gross indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship." *Roberts v. U.S.,* 445 U.S. 552, 558, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980). But while we recognize "that significant public policy interests are advanced when employers are prohibited from discriminating against employees who report violations of the law," we still think it best to defer to the Legislature's extensive efforts and greater flexibility in "balanc[ing] competing interests" and "crafting remedies for retaliation by employers." *HealthTrust,* 967 S.W.2d at 403.

Accordingly, without hearing oral argument, we reverse the court of appeals' judgment in part and render judgment

---

1. The Texas Legislature criminalized failure to report a felony in 2003 (several years after D'Unger was fired), but also required that the accused actually observe the commission of a felony. *See* TEX. PEN. CODE § 38.171.

2. Because of our holding on this issue, we need not reach the remaining issues raised by the Foundation.

that D'Unger take nothing. TEX. R. APP. P. 59.1.