NUMBERS 13-07-00763-CV


 13-07-00764-CV


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


CAROLYNNE FULLER, Appellant,


v.


STEPHEN HYNES, DONNA HYNES,

VICTORIA PALMS RESORT, LLP.,

VICTORIA PALMS RESTAURANT, INC.,

AND HOWARD JOHNSON HOTELS, INC., Appellees.

 




On appeal from the 92nd District Court of Hidalgo County, Texas.


 




MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Benavides


Memorandum Opinion by Justice Benavides


 Appellant, Carolynne Fuller, appeals from two orders granting partial summary
judgment in favor of appellees, Stephen Hynes, Donna Hynes, Victoria Palms Resort, LLP,
Victoria Palms Restaurant, Inc., and Howard Johnson Hotels, Inc. (1) By three issues,
appellant argues that the trial court erred in granting summary judgment on her claims for
breach of contract and wrongful discharge for refusal to perform an illegal act. We affirm.

I. Background 

 This case arises out of a friendship and swinging (2) sexual relationship between two
couples: the Fullers (Carolynne and Michael) and the Hynes (Donna and Stephen). The
Fullers and the Hynes became friends in the early 1980s. Beginning in the 1990s,
Carolynne had consensual sexual relations on numerous occasions with Stephen, and all
but one time, these relations included her husband Michael as a participant. Donna was
present as well during these encounters, and Michael had sexual relations with Donna. At some point in time, the Hynes financed a food import business for the Fullers,
investing a significant amount of money. The business ultimately went bankrupt. The
Hynes then offered the Fullers employment at the Victoria Palms Resort, which was a
trailer park, restaurant, hotel, and recreational vehicle park. In August 2002, the Fullers
started working at the resort. The Fullers were provided with free housing and
transportation during their employment with the Hynes. 

 Carolynne claims that for the first three or four months, she was not paid for her
work. In November 2002, however, the Hynes began paying her a salary. Carolynne
presented to the trial court a memorandum, dated May 28, 2004, from the Hynes to the
Fullers titled "Compensation Package." The memorandum states:

 1. Salary

 

 For the coming 12 months the two of you will be paid $75,000 a year,
split between you. This will be drawn on your normal payroll cheques
[sic] down there and will go to the total overall payroll for the project
as far as our payroll goals are concerned.

 

 2. Accomodation and Automobile

 

 You will have the use of the house and both cars, the expenses of
which will be paid by Victoria Palms. This will include mortgage
interest on the house, notional [sic] rent, and utilities. As for the cars,
Victoria Palms will cover the liability insurance (there's no collision
insurance) and normal operating expenses. If you should decide that
you want to take one of the cars on a long extended trip, the
expenses will be yours.

 

 . . . .

 

 6. Goals and Future Compensation

 

 We should review this arrangement at this time next year, after we've
got another 12 months under our belt, and can compare the financial
results with the previous years. . . . I can see some mutually
acceptable arrangement for an incentive for higher operating
incomes, year over year and we should review this during the next 12
months and make a decision on an annual review next year.


 Carolynne admitted in her deposition that she could have quit the job at any time,
and the Hynes could have fired her at any time. When asked if there was a contract that
stated that the Hynes had to employ her for a particular length of time, Carolynne
answered, "No," and explained that she did not have a "guaranteed" job. Michael testified,
however, that he believed he could only be fired for "cause," stated he believed the
memorandum regarding compensation is "open to interpretation," and refused to agree that
the memorandum did not guaranty employment.

 Although Carolynne admits that she engaged in consensual sexual relations with
the Hynes, she also claims that she did not enjoy the encounters and was "traumatized." 
According to Carolynne, after a final sexual encounter on February 7, 2004, she stopped
engaging in sexual relations with the Hynes. Carolynne claims that shortly after she
stopped the sexual encounters, she was fired from her job at Victoria Palms Resort in
November 2004; the Hynes claim she quit. 

 On November 28, 2005, Carolynne brought suit against the Hynes, Victoria Palms
Resort, LLP, Victoria Palms Restaurant, Inc., and Howard Johnson Hotels, Inc. (collectively
"the Hynes defendants"). She alleged causes of action for assault and battery, wrongful
discharge for refusal to perform an illegal act, and intentional infliction of emotional
distress, and sought compensatory and punitive damages. To support her wrongful
discharge claim, Carolynne alleged that she was terminated for refusing to continue to
have sexual relations with the Hynes. In her first amended petition, she clarified that her
wrongful termination claim was based on her refusal "to succumb to sexual harassment." 
The Hynes defendants answered, filed a cross-claim against Carolynne, and filed a third-party action against Michael, alleging conversion, fraud, negligent misrepresentation,
breach of fiduciary duty, and civil conspiracy. 

 On August 8, 2007, the Hynes defendants moved for partial summary judgment on
Carolynne's claims for assault and battery, wrongful discharge, and intentional infliction of
emotional distress. (3) As part of their summary judgment evidence, the Hynes defendants
submitted Carolynne's responses to interrogatories asking her to identify the acts she was
asked to perform and the source of the law that made those acts illegal. In her response,
she stated that Stephen would subject her to sexual harassment, and that "sexual
harassment" was the law that she was asked to violate. 

 Carolynne again amended her petition on August 28, 2007, to include a claim for
breach of an alleged employment contract. In this pleading, Michael was added as a
plaintiff, and he also asserted a claim for breach of contract. In addition to her newly
added breach-of-contract claim, Carolynne claimed that her wrongful-termination claim was
based on her refusal to "succumb to sexual harassment, assaults or batteries, and theft,
all illegal act[s] under Texas, federal or municipal law." 

 Carolynne filed a response to the Hynes defendants' motion for partial summary
judgment the same day she amended her answer. In the response, Carolynne claimed
that 

 [m]aking payment of compensation, especially when paid under the auspices
of an employment contact, subject to performance of sexual favors is
tantamount to asking someone to perform an illegal act. It is illegal to ask
someone to perform sexual favors for pay or for compensation.


Carolynne, however, did not cite any legal authority for her argument. 


 On September 17, 2007, the Hynes defendants filed a second motion for partial
summary judgment, this time attacking Carolynne's and Michael's newly asserted breach
of contract claim. 

 On September 25, 2007, the trial court granted the partial motion for summary
judgment on Carolynne's claims for assault and battery, intentional infliction of emotional
distress, and wrongful discharge, and it severed those claims into trial court cause number
C-2860-05-A-1. On November 27, 2007, the trial court granted the Hynes defendants'
second motion for partial summary judgment and severed the Fullers' breach of contract
claims into trial court cause number C-2860-05-A-2. Carolynne appealed both orders
under separate appellate cause numbers, and we consolidated the appeals. Michael did
not appeal the trial court's order granting summary judgment on his claim for breach of
contract. 

II. Breach of Employment Contract

 By her first and second issues, Carolynne argues that the trial court erred in
rendering summary judgment on her breach of contract claim because the Hynes
defendants breached a valid employment agreement, which had a specific term of
employment. She argues that the agreement is plain and unambiguous, and to the extent
it is ambiguous, a fact question exists as to the terms of the contract and whether it was
performed. 

A. Summary Judgment Standard

 The Hynes defendants moved for traditional summary judgment on Carolynne's
breach of contract claim. We review an order granting a traditional summary judgment de
novo. See Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 816 n. 7 (Tex. 2005) (citing
Schneider Nat'l Carriers, Inc. v. Bates, 147 S.W.3d 264, 290 n. 137 (Tex. 2004)). To be
entitled to summary judgment, the movant must demonstrate that no genuine issues of
material fact exist and that he is entitled to judgment as a matter of law. See Tex. R. Civ.
P. 166a(c). Once the movant satisfies his burden, the burden shifts to the non-movant to
produce evidence sufficient to raise a fact issue. See Walker v. Harris, 924 S.W.2d 375,
377 (Tex. 1996). In determining whether a fact issue exists, evidence favorable to the
non-movant is taken as true. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex.
1997) (citing Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985)). All
doubts will be resolved in favor of the non-movant, and all reasonable inferences will be
indulged in his favor. Id. (citing Nixon, 690 S.W.2d at 549).

B. Analysis

 Carolynne argues she and the Hynes modified her at-will employment status
through the memorandum dated May 28, 2004. Carolynne argues that for twelve months,
she was to be paid $75,000, was to be allowed the use of a car and a house, and was to
receive other benefits. Carolynne points to language in the memorandum stating that her
compensation would be reviewed after twelve months. Carolynne further points to the
memorandum's reference to an "arrangement" as evidence that a contract was created. 
The Hynes defendants argued that Carolynne's employment was presumed at-will under
Texas law, and the memorandum relied upon by Carolynne did not alter her at-will status. 
Id. We agree with the Hynes defendants.

 In Texas, employment is presumed to be at-will--in other words, an employee can
quit or an employer can terminate an employee for "'good cause, bad cause, or no cause 
at all.'" Midland Judicial Dist. Cmty. Supervision & Corrs. Dept. v. Jones, 92 S.W.3d 486,
487 (Tex. 2002) (quoting Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502
(Tex.1998)). In order to defeat the presumption of at-will employment and prove a wrongful
termination claim, the employee must prove that the employer "unequivocally indicate[d]
a definite intent . . . to be bound not to terminate the employee except under clearly
specified circumstances." Id. (quoting Montgomery County Hosp. Dist., 965 S.W.2d at
502). "Standing alone, an agreement to pay at a stated rate is not enough; if it were, there
would be very few at-will employees." Ed Rachal Found. v. D'Unger, 207 S.W.3d 330, 332
(Tex. 2006). 

 In Jones, for example, the plaintiff was given a memorandum stating the
compensation she would receive, raises anticipated over the next year, and that the salary
figures were "contingent upon [her] future performance evaluations and available county
funding." 92 S.W.3d at 487. The memorandum did not state that the employment could
be terminated only for specific reasons. Id. The supreme court held that the memorandum
did not reflect an "intent to be bound not to terminate her employment except under clearly
specified circumstances." Id. Thus, summary judgment was proper in favor of the
employer. Id. 

 The May 28, 2004 memorandum did nothing more than set out the proposed salary
for the Fullers. Nowhere in the memorandum do the Hynes defendants express an
unequivocal intent to be bound "not to terminate [Carolynne's] employment except under
clearly specified circumstances." See id. As in Jones, the fact that the salary figures could
change based on future evaluations does not express an intent to continue the
employment unconditionally until those evaluations occurred. See id. Accordingly, the
Hynes defendants conclusively established their right to summary judgment on Carolynne's
breach of contract claim, and Carolynne did not raise an issue of material fact. We
overrule Carolynne's first and second issues.

III. Wrongful Termination for Refusal to Perform an Illegal Act

 By her third issue, Carolynne argues that the trial court erroneously granted
summary judgment on her wrongful termination claim because she was terminated
because of her refusal to perform an illegal act.

A. Standard of Review

 The Hynes defendants moved for no-evidence summary judgment on Carolynne's
wrongful termination claim, arguing that there was no evidence that she was ever
requested to perform or refused to perform an illegal act. A movant for no-evidence
summary judgment must allege that there is no evidence of a material element of the
adverse party's claims. Tex. R. Civ. P. 166a(i); see Sw. Elec. Power Co. v. Grant, 73
S.W.3d 211, 215 (Tex. 2002). The nonmovant is not required to marshal its proof but must
produce summary judgment evidence that raises a genuine issue of material fact. Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004); Grant, 73 S.W .3d at 215.

 The nonmovant raises a genuine issue of material fact when he produces more than
a scintilla of evidence to support the existence of the challenged element. Ridgway, 135
S.W.3d at 600. More than a scintilla of evidence is that amount of evidence that would
allow reasonable and fair-minded people to disagree in their conclusions. Id. at 601. 
Because a no-evidence motion for summary judgment is essentially a pretrial directed
verdict, we apply the legal sufficiency standard of review. King Ranch, Inc. v. Chapman,
118 S.W.3d 742, 750-51 (Tex. 2003). Therefore, we must view the evidence "in the light
most favorable to the party against whom the summary judgment was rendered, crediting
evidence favorable to that party if reasonable jurors could, and disregarding contrary
evidence unless reasonable jurors could not." Mack Trucks, Inc. v. Tamez, 206 S.W.3d
572, 582 (Tex. 2006).

B. Analysis

 As stated previously, absent an express agreement to the contrary, employment in
Texas may be terminated at any time without cause. Brown, 965 S.W.2d at 502. In
Sabine Pilot Service, Inc. v. Hauck, the Texas Supreme Court created a narrow exception
to the at-will employment doctrine, providing that an employee can maintain an action for
wrongful termination when he was fired solely for refusing to commit an unlawful act
carrying criminal penalties. 687 S.W.2d 733, 735 (Tex. 1985). The focus of the inquiry in
determining whether an employee was fired for refusing to engage in a criminal act is
whether the act, if performed, would have subjected the employee to criminal penalties.
See D'Unger, 207 S.W.3d at 332-33. We determine that issue based on relevant criminal
statutes. Id. 

 On appeal, Carolynne argues that it is illegal to ask someone to perform sexual
favors for pay or for compensation, and she cites section 43.03 of the Texas Penal Code. (4) 
See Tex. Penal Code Ann. § 43.03 (Vernon 2003). That section provides:

 (a) A person commits an offense if, acting other than as a prostitute
receiving compensation for personally rendered prostitution services,
he or she knowingly:

 

 (1) receives money or other property pursuant to an agreement to
participate in the proceeds of prostitution; or 

 

 (2) solicits another to engage in sexual conduct with another
person for compensation. 

 

 (b) An offense under this section is a Class A misdemeanor.


Id. (emphasis added). Carolynne argues that she was expected to perform sexually to
keep her job, which was tantamount to "soliciting prostitution."

 The Hynes defendants argue that Carolynne did not make this argument in the trial
court; therefore, it cannot be raised as a ground to reverse the summary judgment. See
Tex. R. Civ. P. 166a(c). Although Carolynne did not specifically cite section 43.03, she did
argue that "[i]t is illegal to ask someone to perform sexual favors for pay or for
compensation," which is essentially the argument she now makes on appeal. Accordingly,
out of an abundance of caution, we will address her argument.

 Texas Penal Code section 43.03 criminalizes solicitation of prostitution, and it
expressly does not apply to the prostitute, who is the person who engages in the sexual
conduct for compensation. Tex. Penal Code Ann. § 43.03; see Duffield v. State, 643
S.W.2d 139, 140 (Tex. Crim. App. 1982) (reversing conviction under section 43.03
because the evidence was insufficient "to show that appellant was anything more than a
prostitute . . . ."). If we accept Carolynne's version of the facts, as we must, it is clear that
in the relationship as alleged, she would be categorized as the "prostitute," not the person
soliciting the prostitution. See Duffield, 643 S.W.2d at 140. Carolynne does not argue to
this Court, nor did she argue below, however, that the illegal act she was asked to and
refused to perform was engaging in prostitution. Rather, she has consistently argued that
the illegal act was requesting a person to engage in prostitution, which is an entirely
different act. There is no evidence in the record that Carolynne refused to solicit
prostitution. We overrule her third issue.

IV. Conclusion

 Having overruled all of Carolynne's issues, (5) we affirm. 



 ______________________________

 GINA M. BENAVIDES,

 Justice


 

Memorandum Opinion delivered and 

filed this the 8th day of October, 2009.

1. The trial court severed both orders into two separate trial court cause numbers, making them final
for purposes of appeal, and Carolynne has appealed both summary judgment orders in two separate appellate
causes. We granted the parties' joint motion to consolidate the appeals.
2. "Swinging" has been defined as "non-monogamous sexual activity, treated much like any other social
activity, that can be experienced as a couple." See Curtis Bergstrand & Jennifer Blevins Williams, Today's
Alternative Marriage Styles: The Case of Swingers, Electronic Journal of Human Sexuality, Vol.3 (October
10, 2000), available at http://www.ejhs.org/volume3/swing/body.htm (Last visited Sept. 14, 2009). 
3. Although the motion for partial summary judgment also addressed a claim for sexual harassment,
the pleadings did not raise this cause of action, and Carolynne's statement of facts in this appeal does not
reference such a cause of action. Accordingly, it is not before this Court.
4. We note that this is the only penal statute that Carolynne has ever referred to as creating a criminal
penalty for the conduct in which she was asked to engage. Accordingly, we do not address any other potential
theories, which have been waived by her failure to raise them in this Court and in the trial court.
5. Carolynne's appellate brief does not challenge the trial court's order granting summary judgment
on her claims for assault and battery and intentional infliction of emotional distress. Therefore, we do not
address those claims.