

NUMBERS 13-07-00763-CV
13-07-00764-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CAROLYNNE FULLER,                                             **Appellant,**

**v.**

STEPHEN HYNES, DONNA HYNES,
VICTORIA PALMS RESORT, LLP.,
VICTORIA PALMS RESTAURANT, INC.,
AND HOWARD JOHNSON HOTELS, INC.,         **Appellees.**

On appeal from the 92nd District Court of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Justice Benavides

Appellant, Carolynne Fuller, appeals from two orders granting partial summary

judgment in favor of appellees, Stephen Hynes, Donna Hynes, Victoria Palms Resort, LLP,

Victoria Palms Restaurant, Inc., and Howard Johnson Hotels, Inc.[1]  By three issues, appellant argues that the trial court erred in granting summary judgment on her claims for breach of contract and wrongful discharge for refusal to perform an illegal act.  We affirm.

## I. BACKGROUND

This case arises out of a friendship and swinging[2] sexual relationship between two couples:  the Fullers (Carolynne and Michael) and the Hynes (Donna and Stephen).  The Fullers and the Hynes became friends in the early 1980s.  Beginning in the 1990s, Carolynne had consensual sexual relations on numerous occasions with Stephen, and all but one time, these relations included her husband Michael as a participant.  Donna was present as well during these encounters, and Michael had sexual relations with Donna.

At some point in time, the Hynes financed a food import business for the Fullers, investing a significant amount of money.  The business ultimately went bankrupt.  The Hynes then offered the Fullers employment at the Victoria Palms Resort, which was a trailer park, restaurant, hotel, and recreational vehicle park.  In August 2002, the Fullers started working at the resort.  The Fullers were provided with free housing and transportation during their employment with the Hynes.

Carolynne claims that for the first three or four months, she was not paid for her work.  In November 2002, however, the Hynes began paying her a salary.  Carolynne presented to the trial court a memorandum, dated May 28, 2004, from the Hynes to the Fullers titled "Compensation Package."  The memorandum states:

1.    Salary

> For the coming 12 months the two of you will be paid $75,000 a year, split between you.  This will be drawn on your normal payroll cheques

---

[1] The trial court severed both orders into two separate trial court cause numbers, making them final for purposes of appeal, and Carolynne has appealed both summary judgment orders in two separate appellate causes.  We granted the parties' joint motion to consolidate the appeals.

[2] "Swinging" has been defined as "non-monogamous sexual activity, treated much like any other social activity, that can be experienced as a couple."  *See* Curtis Bergstrand & Jennifer Blevins Williams, *Today's Alternative Marriage Styles: The Case of Swingers*, Electronic Journal of Human Sexuality, Vol.3 (October 10, 2000), *available at* http://www.ejhs.org/volume3/swing/body.htm (Last visited Sept. 14, 2009).

[sic] down there and will go to the total overall payroll for the project as far as our payroll goals are concerned.

2. Accomodation and Automobile

You will have the use of the house and both cars, the expenses of which will be paid by Victoria Palms. This will include mortgage interest on the house, notional [sic] rent, and utilities. As for the cars, Victoria Palms will cover the liability insurance (there's no collision insurance) and normal operating expenses. If you should decide that you want to take one of the cars on a long extended trip, the expenses will be yours.

. . . .

6. Goals and Future Compensation

We should review this arrangement at this time next year, after we've got another 12 months under our belt, and can compare the financial results with the previous years. . . . I can see some mutually acceptable arrangement for an incentive for higher operating incomes, year over year and we should review this during the next 12 months and make a decision on an annual review next year.

Carolynne admitted in her deposition that she could have quit the job at any time, and the Hynes could have fired her at any time. When asked if there was a contract that stated that the Hynes had to employ her for a particular length of time, Carolynne answered, "No," and explained that she did not have a "guaranteed" job. Michael testified, however, that he believed he could only be fired for "cause," stated he believed the memorandum regarding compensation is "open to interpretation," and refused to agree that the memorandum did not guaranty employment.

Although Carolynne admits that she engaged in consensual sexual relations with the Hynes, she also claims that she did not enjoy the encounters and was "traumatized." According to Carolynne, after a final sexual encounter on February 7, 2004, she stopped engaging in sexual relations with the Hynes. Carolynne claims that shortly after she stopped the sexual encounters, she was fired from her job at Victoria Palms Resort in

3

November 2004; the Hynes claim she quit.

On November 28, 2005, Carolynne brought suit against the Hynes, Victoria Palms Resort, LLP, Victoria Palms Restaurant, Inc., and Howard Johnson Hotels, Inc. (collectively "the Hynes defendants"). She alleged causes of action for assault and battery, wrongful discharge for refusal to perform an illegal act, and intentional infliction of emotional distress, and sought compensatory and punitive damages. To support her wrongful discharge claim, Carolynne alleged that she was terminated for refusing to continue to have sexual relations with the Hynes. In her first amended petition, she clarified that her wrongful termination claim was based on her refusal "to succumb to sexual harassment." The Hynes defendants answered, filed a cross-claim against Carolynne, and filed a third-party action against Michael, alleging conversion, fraud, negligent misrepresentation, breach of fiduciary duty, and civil conspiracy.

On August 8, 2007, the Hynes defendants moved for partial summary judgment on Carolynne's claims for assault and battery, wrongful discharge, and intentional infliction of emotional distress.[3] As part of their summary judgment evidence, the Hynes defendants submitted Carolynne's responses to interrogatories asking her to identify the acts she was asked to perform and the source of the law that made those acts illegal. In her response, she stated that Stephen would subject her to sexual harassment, and that "sexual harassment" was the law that she was asked to violate.

Carolynne again amended her petition on August 28, 2007, to include a claim for breach of an alleged employment contract. In this pleading, Michael was added as a plaintiff, and he also asserted a claim for breach of contract. In addition to her newly

---

[3] Although the motion for partial summary judgment also addressed a claim for sexual harassment, the pleadings did not raise this cause of action, and Carolynne's statement of facts in this appeal does not reference such a cause of action. Accordingly, it is not before this Court.

4

added breach-of-contract claim, Carolynne claimed that her wrongful-termination claim was based on her refusal to "succumb to sexual harassment, assaults or batteries, and theft, all illegal act[s] under Texas, federal or municipal law."

Carolynne filed a response to the Hynes defendants' motion for partial summary judgment the same day she amended her answer. In the response, Carolynne claimed that

> [m]aking payment of compensation, especially when paid under the auspices of an employment contact, subject to performance of sexual favors is tantamount to asking someone to perform an illegal act. It is illegal to ask someone to perform sexual favors for pay or for compensation.

Carolynne, however, did not cite any legal authority for her argument.

On September 17, 2007, the Hynes defendants filed a second motion for partial summary judgment, this time attacking Carolynne's and Michael's newly asserted breach of contract claim.

On September 25, 2007, the trial court granted the partial motion for summary judgment on Carolynne's claims for assault and battery, intentional infliction of emotional distress, and wrongful discharge, and it severed those claims into trial court cause number C-2860-05-A-1. On November 27, 2007, the trial court granted the Hynes defendants' second motion for partial summary judgment and severed the Fullers' breach of contract claims into trial court cause number C-2860-05-A-2. Carolynne appealed both orders under separate appellate cause numbers, and we consolidated the appeals. Michael did not appeal the trial court's order granting summary judgment on his claim for breach of contract.

## II. BREACH OF EMPLOYMENT CONTRACT

By her first and second issues, Carolynne argues that the trial court erred in

5

rendering summary judgment on her breach of contract claim because the Hynes defendants breached a valid employment agreement, which had a specific term of employment. She argues that the agreement is plain and unambiguous, and to the extent it is ambiguous, a fact question exists as to the terms of the contract and whether it was performed.

## A. Summary Judgment Standard

The Hynes defendants moved for traditional summary judgment on Carolynne's breach of contract claim. We review an order granting a traditional summary judgment de novo. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n. 7 (Tex. 2005) (citing *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 290 n. 137 (Tex. 2004)). To be entitled to summary judgment, the movant must demonstrate that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). Once the movant satisfies his burden, the burden shifts to the non-movant to produce evidence sufficient to raise a fact issue. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In determining whether a fact issue exists, evidence favorable to the non-movant is taken as true. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)). All doubts will be resolved in favor of the non-movant, and all reasonable inferences will be indulged in his favor. *Id.* (citing *Nixon*, 690 S.W.2d at 549).

## B. Analysis

Carolynne argues she and the Hynes modified her at-will employment status through the memorandum dated May 28, 2004. Carolynne argues that for twelve months, she was to be paid $75,000, was to be allowed the use of a car and a house, and was to receive other benefits. Carolynne points to language in the memorandum stating that her

compensation would be reviewed after twelve months. Carolynne further points to the memorandum's reference to an "arrangement" as evidence that a contract was created. The Hynes defendants argued that Carolynne's employment was presumed at-will under Texas law, and the memorandum relied upon by Carolynne did not alter her at-will status. *Id.* We agree with the Hynes defendants.

In Texas, employment is presumed to be at-will—in other words, an employee can quit or an employer can terminate an employee for "'good cause, bad cause, or no cause at all.'" *Midland Judicial Dist. Cmty. Supervision & Corrs. Dept. v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002) (quoting *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex.1998)). In order to defeat the presumption of at-will employment and prove a wrongful termination claim, the employee must prove that the employer "unequivocally indicate[d] a definite intent . . . to be bound not to terminate the employee except under clearly specified circumstances." *Id.* (quoting *Montgomery County Hosp. Dist.,* 965 S.W.2d at 502). "Standing alone, an agreement to pay at a stated rate is not enough; if it were, there would be very few at-will employees." *Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332 (Tex. 2006).

In *Jones*, for example, the plaintiff was given a memorandum stating the compensation she would receive, raises anticipated over the next year, and that the salary figures were "contingent upon [her] future performance evaluations and available county funding." 92 S.W.3d at 487. The memorandum did not state that the employment could be terminated only for specific reasons. *Id.* The supreme court held that the memorandum did not reflect an "intent to be bound not to terminate her employment except under clearly specified circumstances." *Id.* Thus, summary judgment was proper in favor of the employer. *Id.*

7

The May 28, 2004 memorandum did nothing more than set out the proposed salary for the Fullers. Nowhere in the memorandum do the Hynes defendants express an unequivocal intent to be bound "not to terminate [Carolynne's] employment except under clearly specified circumstances." *See id.* As in *Jones*, the fact that the salary figures could change based on future evaluations does not express an intent to continue the employment unconditionally until those evaluations occurred. *See id.* Accordingly, the Hynes defendants conclusively established their right to summary judgment on Carolynne's breach of contract claim, and Carolynne did not raise an issue of material fact. We overrule Carolynne's first and second issues.

### III. Wrongful Termination for Refusal to Perform an Illegal Act

By her third issue, Carolynne argues that the trial court erroneously granted summary judgment on her wrongful termination claim because she was terminated because of her refusal to perform an illegal act.

### A. Standard of Review

The Hynes defendants moved for no-evidence summary judgment on Carolynne's wrongful termination claim, arguing that there was no evidence that she was ever requested to perform or refused to perform an illegal act. A movant for no-evidence summary judgment must allege that there is no evidence of a material element of the adverse party's claims. Tex. R. Civ. P. 166a(i); *see Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The nonmovant is not required to marshal its proof but must produce summary judgment evidence that raises a genuine issue of material fact. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Grant*, 73 S.W .3d at 215.

The nonmovant raises a genuine issue of material fact when he produces more than

a scintilla of evidence to support the existence of the challenged element. *Ridgway*, 135 S.W.3d at 600. More than a scintilla of evidence is that amount of evidence that would allow reasonable and fair-minded people to disagree in their conclusions. *Id.* at 601. Because a no-evidence motion for summary judgment is essentially a pretrial directed verdict, we apply the legal sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Therefore, we must view the evidence "in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

**B. Analysis**

As stated previously, absent an express agreement to the contrary, employment in Texas may be terminated at any time without cause. *Brown*, 965 S.W.2d at 502. In *Sabine Pilot Service, Inc. v. Hauck,* the Texas Supreme Court created a narrow exception to the at-will employment doctrine, providing that an employee can maintain an action for wrongful termination when he was fired solely for refusing to commit an unlawful act carrying criminal penalties. 687 S.W.2d 733, 735 (Tex. 1985). The focus of the inquiry in determining whether an employee was fired for refusing to engage in a criminal act is whether the act, if performed, would have subjected the employee to criminal penalties. *See D'Unger*, 207 S.W.3d at 332-33. We determine that issue based on relevant criminal statutes. *Id.*

On appeal, Carolynne argues that it is illegal to ask someone to perform sexual

9

favors for pay or for compensation, and she cites section 43.03 of the Texas Penal Code.[4]

*See* TEX. PENAL CODE ANN. § 43.03 (Vernon 2003).  That section provides:

    (a)    A person commits an offense if, *acting other than as a prostitute receiving compensation for personally rendered prostitution services*, he or she knowingly:

        (1)    receives money or other property pursuant to an agreement to participate in the proceeds of prostitution; or

        (2)    solicits another to engage in sexual conduct with another person for compensation.

    (b)    An offense under this section is a Class A misdemeanor.

*Id.* (emphasis added).  Carolynne argues that she was expected to perform sexually to keep her job, which was tantamount to "soliciting prostitution."

The Hynes defendants argue that Carolynne did not make this argument in the trial court; therefore, it cannot be raised as a ground to reverse the summary judgment.  *See* TEX. R. CIV. P. 166a(c).  Although Carolynne did not specifically cite section 43.03, she did argue that "[i]t is illegal to ask someone to perform sexual favors for pay or for compensation," which is essentially the argument she now makes on appeal.  Accordingly, out of an abundance of caution, we will address her argument.

Texas Penal Code section 43.03 criminalizes solicitation of prostitution, and it expressly does not apply *to the prostitute*, who is the person who engages in the sexual conduct for compensation.  TEX. PENAL CODE ANN. § 43.03; *see Duffield v. State*, 643 S.W.2d 139, 140 (Tex. Crim. App. 1982) (reversing conviction under section 43.03 because the evidence was insufficient "to show that appellant was anything more than a

---

[4] We note that this is the only penal statute that Carolynne has ever referred to as creating a criminal penalty for the conduct in which she was asked to engage.  Accordingly, we do not address any other potential theories, which have been waived by her failure to raise them in this Court and in the trial court.

prostitute . . . ."). If we accept Carolynne's version of the facts, as we must, it is clear that in the relationship as alleged, she would be categorized as the "prostitute," not the person *soliciting* the prostitution. *See Duffield*, 643 S.W.2d at 140. Carolynne does not argue to this Court, nor did she argue below, however, that the illegal act she was asked to and refused to perform was engaging in *prostitution.* Rather, she has consistently argued that the illegal act was *requesting* a person to engage in prostitution, which is an entirely different act. There is no evidence in the record that Carolynne refused to *solicit* prostitution. We overrule her third issue.

## IV. CONCLUSION

Having overruled all of Carolynne's issues,[5] we affirm.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 8th day of October, 2009.

---

[5] Carolynne's appellate brief does not challenge the trial court's order granting summary judgment on her claims for assault and battery and intentional infliction of emotional distress. Therefore, we do not address those claims.

11