**Opinion issued August 2, 2012.**



In The

# Court of Appeals

For The

## First District of Texas

———————————————

### NO. 01-11-00871-CV

———————————————

**KIMBERLEY SOUKUP, Appellant**

**V.**

**SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.; BRIDGESTONE RETAIL OPERATIONS, LLC D/B/A BSRO; BRIDGESTONE AMERICAS, INC.; FIRESTONE POLYMERS, LLC; AND STEPHEN T. SMITH,**

**Appellees**

———————————————

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-35309**

———————————————

## MEMORANDUM OPINION

Kimberley Soukup appeals from the trial court's summary judgments on her

claims against Sedgwick Claims Management Services, Inc. for wrongful

discharge and against Bridgestone Retail Operations, LLC d/b/a BSRO; Bridgestone Americas, Inc.; Firestone Polymers, LLC (collectively, Bridgestone); and Stephen T. Smith for tortious interference with employment relations. We affirm the trial court's judgment.

## Background

Soukup contends that she was wrongfully discharged from her job as a claims adjuster for Sedgwick after refusing to participate in illegal activities related to her handling of workers' compensation claims for Bridgestone, one of Sedgwick's clients. Bridgestone hired Sedgwick to administer its employees' workers' compensation claims. Bridgestone was not self-insured but retained "a very large deductible" and thus paid a portion of its employees' benefits. According to Soukup, Bridgestone pressured Sedgwick to violate certain legal duties Sedgwick owed to the workers' compensation claimants. Generally, she asserts that (1) Texas law prohibits Bridgestone from directing Sedgwick's handling of its employees' workers' compensation claims, but (2) Bridgestone and Smith, Bridgestone's attorney, nevertheless interfered with her handling of those claims, and (3) at Bridgestone's urging, Sedgwick constructively terminated her employment when Bridgestone complained about her handling of its employees' claims. She sued Sedgwick for wrongful discharge and Bridgestone and Smith for tortious interference with her employment.

2

Sedgwick, Bridgestone, and Smith each moved for traditional and no-evidence summary judgment on Soukup's claims against them, and Soukup responded jointly to the motions. The trial court granted summary judgment against Soukup on all of her claims. After the trial court denied her motion for new trial, Soukup appealed, challenging the trial court's orders granting summary judgment and denying new trial.

**Standards of Review**

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex.2009). In conducting our review, we view the evidence in the light most favorable to the nonmovant, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848; *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When, as here, the trial court's summary judgment order does not specify the grounds on which it was granted, we must affirm the order if any of the asserted grounds for summary judgment are meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

On a motion for traditional summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that it is entitled to judgment

3

as a matter of law. *See* TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). The movant may satisfy this burden by conclusively negating at least one essential element of each of the plaintiff's causes of action. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). On a motion for no-evidence summary judgment, the nonmovant has the burden to present evidence sufficient to raise a genuine issue of fact on each of her claims. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The nonmovant may satisfy this burden by presenting more than a scintilla of evidence on each challenged element of each cause of action on which she has the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Mack Trucks*, 206 S.W.3d at 582; *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

We review a trial court's denial of a motion for a new trial for abuse of discretion. *See In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006). The trial court abuses its discretion if it acts without reference to any guiding principles or acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We view the evidence submitted to the trial court in the light most favorable to the court's ruling, draw all legitimate inferences from the evidence, and defer to the trial court's resolution of conflicting evidence. *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 892 (Tex. App.—

Houston [1st Dist.] 2011, no pet.). A trial court does not abuse its discretion with regard to factual matters so long as some evidence reasonably supports the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

**Summary Judgment on Wrongful Discharge**

Soukup claims that Sedgwick constructively terminated her because she refused Bridgestone's directions to perform illegal actions in handling Bridgestone's workers' compensation claims. Sedgwick asserts that Soukup has no evidence of each of the elements of her wrongful discharge claim, including no evidence that it ever directed Soukup to engage in any activity that would have subjected her to criminal sanctions if she had complied, that she ever refused such a directive, or that she was fired for refusing such a directive (or fired at all). Soukup responds that she presented evidence sufficient to raise a fact question on each element of her wrongful discharge claim.

We conclude that there is no summary judgment evidence that Soukup refused to comply with a directive from Sedgwick to perform an illegal act.

**A.    Wrongful discharge under the *Sabine Pilot* exception to at-will employment**

Texas is an at-will employment state, meaning that employers generally may terminate their employees at any time, for any or no reason, without incurring liability under Texas law, unless they have contractually agreed otherwise. *See E. Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex. 1888) (adopting at-will

employment doctrine); *see also Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998) ("For well over a century, the general rule in this State, as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all."); *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734−35 (Tex. 1985) (noting certain statutory exceptions to general rule). In *Sabine Pilot*, the Texas Supreme Court judicially crafted a "very narrow exception" to this general rule, recognizing a cause of action against an employer that discharges its employee "for the sole reason that the employee refused to perform an illegal act." 687 S.W.2d at 735.

To prevail on her *Sabine Pilot* claim, Soukup must prove: (1) her employer directed her to commit a crime, (2) she refused to comply, and (3) her employer discharged her (4) for the sole reason that she refused to commit the crime. *See Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 659 (Tex. 2012); *see also Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332 (Tex. 2006) ("*Sabine Pilot* protects employees who are asked to *commit* a crime, not those who are asked not to *report* one."). The *Sabine Pilot* cause of action "only applies if [Soukup] was *forced to choose* between committing a criminal act and being discharged." *Burling v. Davis*, No. 01-00-01279-CV, 2002 WL 188485, at *2 (Tex. App.—Houston [1st Dist.] Feb. 7, 2002, no pet.) (not designated for publication); *see Winters v.*

6

*Houston Chronicle Publ'g Co.*, 795 S.W.2d 723, 724 (Tex. 1990) (holding that claimant did not qualify for *Sabine Pilot* cause of action "because he was not unacceptably forced to choose between risking criminal liability or being discharged from his livelihood.").

**B.    There is no evidence that Soukup's employer directed her to perform a criminal act, which she refused to perform**

In support of her contention that she raised a fact issue on whether she was directed (and refused) to commit a crime, Soukup relies on three pieces of evidence: her own affidavit, her expert affidavit, and excerpts from the deposition of Jamie Cornehl, a licensed adjuster employed by Sedgwick. Soukup's expert affidavit and the cited portions of Cornehl's deposition relate largely to the legality or appropriateness of Bridgestone's claim-related conduct—an issue that we do not reach here. We therefore focus on Soukup's affidavit.

**1.    Soukup's evidence of wrongdoing by Bridgestone is not evidence that she was directed to commit an illegal act**

Soukup's expert testified that it was permissible for Sedgwick to "allow [Bridgestone] to freely discuss a claim and offer opinions with regard to interpretation and evaluation," but Bridgestone could not "direct the handling of the claim" or "make the decisions."[1] In her affidavit, Soukup identifies several

---

[1]    On appeal neither party challenges this statement by Soukup's expert. We do not, therefore, consider whether this is an accurate statement of Texas law.

ways in which she asserts Bridgestone crossed the line and directed the handling of workers' compensation claims assigned to her, including: exercising control over the setting of reserves, injecting its attorney (Smith) and a consulting physician (Dr. Mitsos) into investigations, failing to disclose materials to or from Dr. Mitsos, failing to provide complete information to Sedgwick, directing her to deny benefits, and conducting surveillance of its injured employees. This testimony suggests at most that Bridgestone was engaging in purportedly illegal activity—not that she was directed to commit an illegal act.

But the question in a *Sabine Pilot* claim "is not whether [Bridgestone or Sedgwick] were performing illegal acts; the question instead is whether [Sedgwick, her employer,] ordered [Soukup] to perform an illegal act and whether she refused to do so." *Laredo Med. Grp. Corp. v. Mireles*, 155 S.W.3d 417, 421 (Tex. App.—San Antonio 2004, pet. denied). Sedgwick's evidence of alleged wrongdoing by Bridgestone does not, alone, support a *Sabine Pilot* claim.

### 2. Soukup's evidence of directives from Bridgestone is not evidence that her employer directed her to commit an illegal act

Soukup alleges that some of Bridgestone's misconduct resulted in instructions to her to perform acts that she considered illegal. These instructions included directives not to set reserves in excess of $5,000 without Bridgestone's approval, to reexamine claims if Bridgestone thought reserves were too high, to send Bridgestone surveillance videos taken of injured employees, to deny benefits

based on Bridgestone's opinion of extent of injury, to send medical files to Dr. Mitsos for review, to send incomplete claim files to Dr. Mitsos for review, not to disclose Dr. Mitsos's involvement or reports, to wait until Dr. Mitsos completed his review of the medical files before setting reserves or determining compensability, and to adopt Dr. Mitsos's rationales. We hold that these alleged directives will not support a *Sabine Pilot* claim because they came from Bridgestone rather than Sedgwick, Soukup's direct employer.

*Sabine Pilot* and its progeny impose liability on an employer that directs its employee to perform an illegal act and fires the employee for refusing to comply. *See, e.g.*, *Sabine Pilot*, 687 S.W.2d at 734–35 (recognizing cause of action for employee whose employer directed him to pump waste into public waters); *Safeshred*, 365 S.W.3d at 659 (affirming in part judgment in favor of employee whose employer terminated him for refusing to drive truck that did not comply with legal requirements); *Lisanti v. Dixon*, 147 S.W.3d 638, 643 (Tex. App.—Dallas 2004, pet. denied) (affirming judgment in favor of employee whose employer directed her to falsify insurance claims); *Ebasco Constructors, Inc. v. Rex*, 923 S.W.2d 694, 699 (Tex. App.—Corpus Christi 1996, writ denied) (affirming judgment in favor of employee whose employer directed him to falsify documents relating to nuclear power plant). Soukup does not cite, and we have not found, any case extending the *Sabine Pilot* exception to hold an employer liable

9

when a third-party allegedly directed its employee to perform an illegal act. While the Texas Supreme Court may decide to expand *Sabine Pilot*, it has generally declined to do so. *See Safeshred*, 365 S.W.3d at 659 ("[W]e have consistently refused to expand *Sabine Pilot* beyond the 'narrow exception' we recognized in that case."). Nor have Texas courts of appeals expanded the common law cause of action. *See Martin v. Clinical Pathology Labs., Inc.*, 343 S.W.3d 885, 892 (Tex. App.—Dallas 2011, pet. denied) ("After *Sabine Pilot*, Texas courts have rebuffed many attempts to enlarge the number of exceptions to the at-will doctrine."); *Johnson v. Waxahachie Indep. Sch. Dist.*, 322 S.W.3d 396, 400 (Tex. App.— Houston [14th Dist.] 2010, no pet.) ("[I]t is not an appropriate role for this court to further erode the employment-at-will doctrine through additional exceptions."); *Hancock v. Express One Int'l, Inc.*, 800 S.W.2d 634, 636 (Tex. App.—Dallas 1990, writ denied) ("It is not for an intermediate appellate court to undertake to enlarge or extend the grounds for wrongful discharge under the employment-at-will doctrine. If such an exception is to be created, the Texas Supreme Court should do so."). We therefore decline, under the facts of this case, to expand *Sabine Pilot* to impose liability on employers based on third-party directives to their employees.

**3. Soukup has no evidence of directives from Sedgwick with which she refused to comply**

Soukup references Sedgwick in her affidavit in only two respects: (1) she asserts that she complained about Bridgestone and Smith to her supervisor at

Sedgwick, Jamie Cornehl, and (2) she asserts that Sedgwick conducted verbal counseling with her in response to complaints from Bridgestone, reprimanding her for being inflexible and refusing to find mutually agreeable solutions to problems with Bridgestone. These are not allegations that Sedgwick directed Soukup to perform an illegal act. In deposition testimony in the summary judgment record,[2] Soukup testified that her supervisor, Cornehl, was the only person at Sedgwick who gave her directives that she considered to be illegal. She further testified that she never refused to perform any act that Cornehl asked of her.

Even if Cornehl directed Soukup to perform an illegal act, such a directive would not support a *Sabine Pilot* claim because Soukup testified that she complied with all of Cornehl's directives. Refusal to commit the requested criminal act is a necessary element of a *Sabine Pilot* claim. *See Sabine Pilot*, 687 S.W.2d at 735; *see also Safeshred*, 365 S.W.3d at 659; *Winters*, 795 S.W.2d at 724. When the employee performs the requested illegal act, she may not prevail on a *Sabine Pilot* claim even if she complains about the request. *See Laredo Med. Grp.*, 155 S.W.3d at 422−23 ("Instead of refusing to prepare the reports, [the plaintiff] complained to her supervisors and others that she believed that there were problems in the billing

---

[2]  In reviewing the trial court's summary judgment ruling, we consider only those portions of Soukup's deposition that were included in the summary judgment record. *See* TEX. R. CIV. P. 166a(c); *see also Rodriguez v. Spencer*, 902 S.W.2d 37, 45 (Tex. App.—Houston [1st Dist.] 1995, no writ) (holding that appellate court reviewing summary judgment order may not consider evidence filed with motion for new trial but not as summary judgment evidence).

department. In other words, [the plaintiff] did not refuse to do an illegal act; she only complained about alleged illegal acts committed in the billing department. This evidence is not sufficient to support a *Sabine Pilot* cause of action."); *see also Winters*, 795 S.W.2d at 723−24 (holding that employee who was fired after complaining about employer's alleged illegal activities to upper-level management did not fall within *Sabine Pilot* exception to at-will employment); *Louis v. Mobil Chem. Co.*, 254 S.W.3d 602, 609–10 (Tex. App.—Beaumont 2008, no pet.) (holding that plaintiff's claim sounded in wrongful discharge but plaintiff could not prevail under *Sabine Pilot* because he actually performed the requested illegal act). Thus, Soukup failed to put forth summary judgment evidence that she refused to comply with a directive from Sedgwick to perform a purportedly criminal act.

Because there is no summary judgment evidence that Soukup was directed by Sedgwick to commit a purportedly criminal act and refused that directive, we affirm the trial court's summary judgment against Soukup on her wrongful termination claim against Sedgwick. We do not reach the issues of whether any alleged directives required conduct that would have given rise to criminal liability, whether Sedgwick constructively terminated Soukup, or whether the sole cause of any such termination was Soukup's refusal to perform illegal acts.

12

**Summary Judgment on Tortious Interference**

In order to prevail on her tortious interference claim against Bridgestone and Smith, Soukup must prove that (1) she had a valid contract with Sedgwick; (2) Bridgestone and Smith willfully and intentionally interfered with that contract; (3) such interference proximately caused Soukup's injury; and (4) Soukup incurred actual damage or loss. *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996); *Holloway v. Skinner*, 898 S.W.2d 793, 795−96 (Tex. 1995). Soukup contends that the trial court erred in granting summary judgment against her because she presented evidence sufficient to raise a question of fact on each of these elements. Because we conclude that she has presented no evidence of actual damage or loss, we do not reach the remaining elements.

**A.      Soukup did not present evidence of the damages element of her tortious interference claim**

We assume, without deciding, that Soukup was constructively discharged by Sedgwick and that the termination was proximately caused by unjustified tortious interference by Bridgestone and Smith. But termination or a change in job circumstances is not, alone, sufficient to raise a fact issue on actual damages or loss. *See KTRK Television, Inc. v. Fowkes*, 981 S.W.2d 779, 790 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (evidence that plaintiff was transferred was not sufficient alone to raise fact issue on actual damages), *disapproved of on other grounds by Turner v. KTRK Television, Inc.*, 38 S.W.3d 103 (Tex. 2000). We

therefore must determine whether Soukup presented evidence sufficient to raise a fact question on actual damages or loss.

### 1.     Soukup only presented evidence of mental anguish damages

Soukup relies on the following affidavit testimony as raising an issue of fact on the element of actual damages or loss:[3]

> As a result of the illegal requirements of my job and Sedgwick's posting of my job to be filled by someone else, I suffered extreme stress, with resulting negative effects on my health that required the treatment of medical professionals and medical leave.

Although Soukup also testified that Sedgwick terminated her, she did not assert that she suffered any economic or other damages as a result of that termination. To the contrary, the record contains evidence that, while on approved short-term disability leave from Sedgwick, Soukup attained new employment as a workers' compensation claims adjuster with another company at a higher salary, that she started her new job on the day she was expected to return to work at Sedgwick from her leave, and that she retained her new job through the date of her deposition. *See generally Gulf Consol. Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex. 1983) (per curiam) (stating that aggrieved employee must use reasonable efforts to mitigate or reduce her loss or damage by seeking other employment).

---

[3]     Soukup also cites to testimony from her deposition, filed with her motion for new trial. As discussed above, we cannot consider evidence that was not part of the summary judgment record in reviewing the trial court's summary judgment orders.

**2.     Soukup cannot recover mental anguish damages**

Generally, mental anguish damages are not recoverable on a claim for tortious interference with a contract. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 818 (Tex. 2005) (stating that "Texas law already recognizes claims for wrongful eviction and tortious interference with contract, neither of which allow mental anguish damages," and plaintiff could not circumvent that restriction by bringing her action as claim for intentional infliction of emotional distress) (citing *Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990)); *Delgado v. Methodist Hosp.*, 936 S.W.2d 479, 486 (Tex. App.—Houston [14th Dist.] 1996, no writ) (stating that mental anguish damages were not recoverable for tortious interference with contract); *see also Crisalli v. Willis Re Inc.*, 560 F. Supp. 2d 512, 515 & n.2 (E.D. Tex. 2006) (recognizing "unavailability of mental anguish damages under [plaintiff's] claim for tortious interference with a contract" and noting that before *Creditwatch* there was conflict in case law as to whether emotional distress damages were recoverable for tortious interference).

This is because the measure of actual damages for tortious interference with a contract is the same as the measure of damages for breach of the interfered-with contract, *Am. Nat'l Petroleum Co.*, 798 S.W.2d at 278, and mental anguish damages generally are not available for breach of a contract. *See City of Tyler v. Likes*, 962 S.W.2d 489, 498 (Tex. 1997); *see also Delgado*, 936 S.W.2d at 486

("mental anguish damages are not recoverable in any tort action based on rights growing out of the breach of a contract"); *Doe v. SmithKline Beecham Corp.*, 855 S.W.2d 248, 258 (Tex. App.—Austin 1993) ("As a general rule, mental anguish does not constitute an element of damages that may be recovered in an action either for breach of contract or for a tort based on a right growing out of a breach of contract."), *aff'd,* 903 S.W.2d 347 (Tex. 1995). Mental anguish damages are available in "a very limited number of contracts dealing with intensely emotional noncommercial subjects such as preparing a corpse for burial or delivering news of a family emergency." *Likes*, 962 S.W.2d at 496. An ordinary employment contract does not fall within this narrow category. *See Myrtle Springs Reverted Indep. Sch. Dist. v. Hogan*, 705 S.W.2d 707, 710−11 (Tex. App.—Texarkana 1985, writ ref'd n.r.e.) (holding that mental anguish damages may not be recovered on breach of employment contract claim). Soukup has not alleged any special relationship with Sedgwick that would give rise to a right to recovery of mental anguish damages.

Because Soukup may not recover mental anguish damages on her tortious interference claim and failed to present evidence of any recoverable damages or loss, we hold that the trial court did not err in granting summary judgment on Soukup's tortious interference claims against Bridgestone and Smith.

16

**Motion for New Trial**

Although Soukup's issues on appeal reference error in the trial court's denial of her motion for new trial, she does not raise any arguments challenging that order other than her arguments challenging the summary judgment orders. Thus, because we have held that the trial court did not err in granting summary judgment on each of Soukup's claims in this action, we hold that Soukup has not demonstrated any abuse of discretion by the trial court in denying her motion for new trial.

**Conclusion**

Because Soukup failed to present sufficient evidence to raise an issue of fact on at least one element of each of her claims, we affirm the trial court's orders granting summary judgment and denying new trial.

Harvey Brown
Justice

Panel consists of Justices Bland, Massengale, and Brown.

17