Charles McCLELLAN, Appellant,

v.

The RITZ–CARLTON HOTEL COMPANY
d/b/a The Ritz–Carlton, Houston, Luis
Argote, and David Caldwell, Appellees.

No. 01–96–01549–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 11, 1997.

William h. Bruckner, Houston, for Appellant.

A.J. Harper, II, Scott Robert McLaughlin, Houston, for Appellees.

Before COHEN, O'CONNOR and TAFT, JJ.

## OPINION

COHEN, Justice.

Appellant sued The Ritz–Carlton Hotel Company (The Ritz) for wrongful termination. He claimed The Ritz fired him for refusing to file a false report that was intended to fraudulently induce an insurer to pay for a tort claim against The Ritz. The trial judge rendered summary judgment for The Ritz. We reverse.

### Facts

Appellant worked at The Ritz as director of security. In February 1992, a Saudi Arabian tenant in room 821 assaulted Granados, a Ritz housekeeper. Controversy centers on whether The Ritz knew of the tenant's prior misconduct against Ritz employees and did nothing.

Appellant's evidence showed that three days before the assault, David Caldwell, the director of human resources, instructed appellant to investigate reports about a certain guest harassing the staff. Almost every female housekeeper reported improper sexual behavior from the Saudi Arabian tenant in room 821. On February 12, appellant told

this to Luis Argote, the general manager. Argote responded, "keep a lid on it," "we've known about this all along," and the situation will "blow over in a day or two."

Three days later, on February 15, the Saudi Arabian sexually assaulted Granados. In June 1992, Granados sued The Ritz. During the investigation, Argote asked appellant to prepare a statement about the incident, which appellant thought was for the hotel's insurance company. Appellant's statement said that three days before the assault, he had told Argote about the situation. Upon seeing appellant's statement, Argote denied the conversation with appellant, demanded that appellant's statement match the hotel's, and threatened to fire appellant if he did not comply. Appellant refused. On July 24, 1992, he was fired.

The Ritz presented conflicting evidence. Argote denied any knowledge of similar sexual assaults and claimed that appellant never told him about the prior incidents of sexual harassment. The Ritz claimed it fired appellant because of his poor employment record, not because of his alleged refusal to lie.

Appellant alleged he was fired for refusing to commit a crime—to lie about the hotel's alleged knowledge of prior sexual assaults. The judge granted summary judgment on two grounds: (1) The Ritz did not fire appellant for the sole reason that he refused to commit a crime, and (2) the act appellant allegedly refused to do carried no criminal penalties. Appellant attacks both grounds on appeal.

## Standard of Review

Summary judgment is proper only when a movant establishes that there is no genuine issue of material fact. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995). One way to do that is to conclusively disprove an element of the plaintiff's claim. *Id.* In reviewing the summary judgment, we must take all the nonmovant's evidence as true, along with all reasonable inferences flowing from it, and we must resolve all doubts in the nonmovant's favor. *Id.*

## Sole Reason

In his first and second points of error, appellant contends The Ritz failed to prove as a matter of law that he was not fired for the "sole reason" of refusing to perform an illegal act. He claims the evidence was in conflict concerning The Ritz's true motive in firing him. We agree.

The longstanding rule in Texas is that employment for an indefinite term may be terminated at will and without cause. *East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888). In *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985), the court created a narrow exception to the employment-at-will doctrine. This "public policy exception" allows an employee to sue for wrongful termination if fired "for the *sole reason* that the employee refused to perform an illegal act." *Id.* (emphasis added). An employer who discharges an employee both for refusing to perform an illegal act and for a legitimate reason cannot be liable for wrongful discharge. *Texas Dep't of Human Servs. v. Hinds,* 904 S.W.2d 629, 633 (Tex.1995).

To prevail, therefore, The Ritz had to prove, conclusively as a matter of law, at least one legitimate reason for firing appellant. The Ritz cites appellant's poor employment record. The following is undisputed. In May 1991, the corporate president received an anonymous, typed letter, that praised appellant and criticized Caldwell, appellant's supervisor. Appellant denied writing the letter, but admitted that the handwriting on the envelope was his. He suggested someone took one of his handwritten pre-addressed envelopes that he kept in his desk. Caldwell, believing that appellant wrote the letter, suspended him.

Moreover, appellant received four warnings from July 1991 to July 1992. He received the first because he did not attend a management/employee function, the second because he "abused" defect reporting procedures, and the third because he did not attend another function. The fourth requested appellant's weekly schedule because Caldwell could not find appellant one day at 2:15 p.m. An employee told Caldwell that appellant had

left until late the next day. The last three warnings were all dated June 19, 1992, a date after the dispute arose over appellant's refusal to make a false report and only five weeks before he was fired.

Appellant presented evidence he did not know about the first, second, and fourth disciplinary actions, relying on the fact that his signature appears only on the third. Although appellant claims he never saw three of the four documents before this lawsuit, he recalled all four incidents and admitted discussing each one with Caldwell.

Viewing the evidence in the light most favorable to the nonmovant (appellant), we hold The Ritz did not prove, as a matter of law, that it fired appellant for a legitimate reason. Three of the four warnings came after Argote threatened to fire appellant unless he lied. The motive for these three is suspect, and the July 1991 misconduct plainly was not the reason for firing, given that appellant kept his job for a year after that. This evidence may show that The Ritz had legitimate grounds to fire appellant, but it does not show, conclusively as a matter of law, that those grounds were the true reason he was fired. The opposite inference may be drawn, and under the law, we must draw it. That inference is that the three reprimands of June 19, 1992 were given in order to build a file for use in defending this lawsuit. Disproving bad motive will often heavily depend, as it does here, on the defendant's credibility; thus, it is a particularly difficult thing to disprove as a matter of law. *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989) (if credibility of an affiant is likely to be a dispositive factor in resolution of a case, then summary judgment is inappropriate). We hold there was a genuine issue of material fact concerning whether appellant's refusal to sign the report was the sole reason he was fired.

We sustain the first and second points of error.

### Criminal Penalties

In his third point of error, appellant contends that The Ritz did not prove as a matter of law that appellant would not have committed a crime by filing a false report. We agree.

Appellant claims Argote asked him to prepare a statement about the Granados incident for the hotel's insurance company in order "to violate or to falsify a statement that would permit Aetna Insurance to pay on the issue of liability. And they was [sic] asking me to do it through correspondence in the mail." Appellant testified, "I went into Louis Argote's office, and ... was told to dictate a statement to [Argote's assistant]; she would type it for my signature; at which time it would be mailed to, I believe, Aetna Insurance and corporate."

Appellant must prove he risked criminal penalties for refusing to perform an illegal act. *Sabine Pilot,* 687 S.W.2d at 735. He contends that if he had signed the false report, he would have committed perjury, aggravated perjury, false report to a peace officer, insurance fraud, and mail fraud.

Perjury and aggravated perjury do not apply because nothing in the record shows The Ritz asked appellant to swear under oath to any false statement. TEX. PENAL CODE ANN. §§ 37.02(a)(1), 37.03 (Vernon 1994). Making a false report to a peace officer does not apply because appellant did not plead or prove that The Ritz asked him to make a false report to the police, but only that appellee told him not to speak to the police. TEX. PENAL CODE ANN. § 37.08 (Vernon 1994). Appellant concedes that insurance fraud does not apply because the statute did not take effect until September 1, 1995, three years after he was fired. TEX. PENAL CODE ANN. § 35.02 (Vernon 1994); *see Farrington v. Sysco Food Servs., Inc.,* 865 S.W.2d 247, 253 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

Finally, appellant contends that signing would have constituted mail fraud:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Ser-

vice, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C.A. § 1341 (West Supp.1997). The elements of mail fraud are (1) a scheme to defraud, and (2) the causing of the use of the mails to execute a scheme. *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). One "causes" the mail to be used "when one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." 347 U.S. at 8–9, 74 S.Ct. at 363. A defendant does not need to personally handle the mail, but there must be sufficient evidence to connect him to the fraudulent scheme involving the use of the mails. *United States v. Finney*, 714 F.2d 420, 423 (5th Cir.1983). Taking appellant's evidence as true, as we must, we conclude that if appellant had knowingly signed a false statement for The Ritz to send by mail in order to fraudulently induce Aetna to pay Granados' tort claim, then appellant could have been criminally liable for mail fraud as a principal or as a conspirator. *See* 18 U.S.C.A. § 2 (1969); 18 U.S.C.A. § 371 (West Supp.1997).

We sustain the third point of error.

The judgment is reversed, and the cause is remanded.