NO. 07-10-00149-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 12, 2012

JOSHUA L. CALAHAN, APPELLANT

v.

FIRST STATE BANK TEXAS, APPELLEE

FROM THE 413TH DISTRICT COURT OF JOHNSON COUNTY;

NO. C-2008-0197; HONORABLE WILLIAM C. BOSWORTH JR., JUDGE

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

This appeal involves a claim brought under *Sabine Pilot Service, Inc. v. Hauck.*[1] Appellant Joshua L. Calahan sued his former employer, appellee First State Bank Texas, after his employment was terminated. Through one issue, he appeals the trial court's final judgment rendering summary judgment in favor of the bank. We affirm.

_____

[1] 687 S.W.2d 733 (Tex. 1985).

## Background

At the time of his termination, Calahan was a collections manager. His responsibilities included those related to repossession of collateral. It is undisputed that he was an "at will" employee.

For several months before his termination, Calahan had worked to repossess collateral securing a defaulted loan to a construction company, which was organized as a limited partnership. The bank's repossession efforts had been impeded by the actions of one of the owners of the business.

Officers of the bank, including a vice president, Amber Witte, also were working on the account. A further effort to repossess equipment stored in a leased building was scheduled for a Friday in February 2008. Three days before, Calahan informed Witte that a warrant for the arrest of the impeding owner had been issued, on a charge of hindering a secured creditor. On Wednesday of that week, Witte and another bank officer met with the construction company's president, who was cooperating with the repossession, to inventory and photograph the equipment. On Friday, the company president gave the bank a key to the building.

The company president did not plan to be present for the repossession of the equipment because she was concerned that her partner in the business might show up and cause trouble. However, in addition to a key to the building, the bank had the cooperation of the building's owner, who gave Witte a combination to unlock a padlock on the gate into the facility. The building owner had initiated eviction proceedings against the construction company but the proceedings were not yet concluded.

On Friday morning, Witte asked Calahan to drive to the construction company's offices to report whether the impeding partner was there. Calahan reported the man's vehicle was at the offices, and Witte instructed him to stay there until sheriff's officers arrived to execute the arrest warrant. Calahan instead left to attend to another duty nearby, and when he returned the man's car was gone.

Calahan also telephoned a captain of the Keene, Texas, police department who on other occasions had assisted Calahan, to ask if he would be available to accompany the bank personnel as they retrieved the construction equipment. In his deposition testimony, Calahan told how he described the repossession plans to the captain during their conversation. The captain told Calahan he would not have an officer available to accompany the bank personnel to the building, which was outside the department's jurisdiction. Too, Calahan recalled that the captain told him the department would not assist with the repossession because "it could be considered trespassing." Elaborating on their conversation, Calahan further testified the captain said the building owner had no right to enter the building, and that because the company president would not be present when they entered the building, despite her consent to the entry and provision of a key, entry "would be considered trespassing."

Calahan reported his conversation to Witte and other bank officers, one of whom, Ronny Korb, tried to reassure Calahan the bank was within its rights to enter the premises and repossess its collateral, and would not put its employees in any danger. Based on his conversation with the captain, however, Calahan determined not to participate in the repossession, and told Witte he would not do so.

3

The equipment repossession was accomplished Friday afternoon without incident. As it happened, a Tarrant County constable and two Tarrant County sheriff's deputies were present, along with the building owner.

On the following Monday, Calahan's employment was terminated. The written notice of termination cited both Calahan's failure to follow Witte's instructions to await sheriff's officers on Friday morning, and his failure to participate in the repossession in the afternoon. The record also shows the bank previously had issued Calahan written warnings on two occasions.

A few weeks later, Calahan filed suit against the bank for wrongful termination. After discovery, the bank filed a no-evidence and traditional motion for summary judgment, which the court granted. This appeal followed.

Analysis

*Summary Judgment*

When a party moves for summary judgment under both Rules of Civil Procedure 166a(c) and 166a(i), we first review the trial court's judgment under the standards of rule 166a(i). If the nonmovant failed to meet its burden by producing more than a scintilla of evidence, there is no need to analyze whether the movant's summary judgment proof satisfied the rule 166a(c) burden. *East Hill Marine, Inc. v. Rinker Boat Co., Inc.*, 229 S.W.3d 813, 816 (Tex.App.--Fort Worth 2007, pet. denied), *citing Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex. 2004).

4

If, as here, a trial court grants summary judgment without specifying the ground on which it relied, the reviewing court must affirm if any of the summary judgment grounds advanced by the movant is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989); *Sunshine Mining & Refining Co. v. Ernst & Young, L.L.P.,* 114 S.W.3d 48, 51-52 (Tex.App.–Eastland 2003, no pet.).

We review summary judgments *de novo.* *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). In so doing, we examine the entire summary judgment record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Yancy v. United Surgical Partners Int'l, Inc.,* 236 S.W.3d 778, 782 (Tex. 2007); *City of Keller v. Wilson,* 168 S.W.3d 802, 824-25 (Tex. 2005).

When a movant files a no-evidence motion in proper form under rule 166a(i), the burden shifts to the nonmovant to defeat the motion by presenting evidence that raises an issue of material fact regarding the elements challenged by the motion. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006); *Weaver v. Highlands Ins. Co.,* 4 S.W.3d 826, 829 (Tex.App.--Houston [1st Dist.] 1999, no pet.). In other words, the nonmovant must respond to a no-evidence motion by presenting more than a scintilla of probative evidence on each challenged element. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003); *DR Partners v. Floyd,* 228 S.W.3d 493, 497 (Tex.App.-- Texarkana 2007, pet. denied). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ

in their conclusions." *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997).

*Wrongful Termination Claim*

In *Sabine Pilot,* 687 S.W.2d at 735, the Texas Supreme Court recognized a narrow exception to the employment-at-will doctrine for an employee discharged "for the sole reason that the employee refused to perform an illegal act." *See Ed Rachal Found. v. D'Unger,* 207 S.W.3d 330 (Tex. 2006) (per curiam); *Winters v. Houston Chronicle Publ'g Co.,* 795 S.W.2d 723, 724 (Tex. 1999) (both describing exception). A plaintiff has the burden to prove by a preponderance of the evidence that his discharge was for the sole reason that he refused to perform an illegal act that would subject him to criminal penalties. *Sabine Pilot,* 687 S.W.2d at 735; *City of Midland v. O'Bryant,* 18 S.W.3d 209, 215 (Tex. 2000); *Winters,* 795 S.W.2d at 724.

The *Sabine Pilot* exception applies when an employee has been unacceptably forced to choose between risking criminal liability or being discharged from his livelihood. *Winters,* 795 S.W.2d at 724. An employer who discharges an employee both for refusing to perform an illegal act and for a legitimate reason cannot be liable for wrongful discharge under *Sabine Pilot*; the refusal must be the sole cause for the employee's termination. *Tex. Dep't of Human Servs. v. Hinds,* 904 S.W.2d 629, 633 (Tex. 1995); *McClellan v. Ritz-Carlton Hotel Co.,* 961 S.W.2d 463, 464 (Tex.App.–Houston [1st Dist.] 1997, no pet.).

6

Calahan contends the sole reason for his discharge was his refusal to engage in conduct that amounted to a crime, criminal trespass. The bank asserted several grounds supporting summary judgment in its favor. We will address one of the grounds and express no opinion on the others. The bank argues summary judgment should be affirmed because it asserted a meritorious no-evidence ground challenging Calahan's evidence that the repossession involved a criminal trespass. We agree.

At the time of these events,[2] Section 30.05 of the Penal Code, defining criminal trespass, provided:

(a) A person commits an offense if he enters or remains on or in property, including an aircraft or other vehicle, of another without effective consent or he enters or remains in a building of another without effective consent and he:

   (1) had notice that the entry was forbidden; or

   (2) received notice to depart but failed to do so[.]

Tex. Penal Code Ann. § 30.05 (West 2008). Under the circumstances described in the record, if criminal, the offense would have been a Class B misdemeanor. Tex. Penal Code Ann. § 30.05(d) (West 2008).

Important to the resolution of this appeal, the terms "effective consent" and "owner" are defined by the Penal Code. Effective consent includes "consent by a person legally authorized to act for the owner. Consent is not effective if: (A) induced by force, threat, or fraud; (B) given by a person the actor knows is not legally authorized to act for the owner; (C) given by a person who by reason of youth, mental disease or

_____

[2] The Penal Code description of criminal trespass was later amended. Acts 2009, 81st Leg., ch. 1138 (H.B. 2609), §§ 1-4, effective September 1, 2009; Acts 2011, 82nd Leg., ch. 91 (S.B. 1303), § 20.001, effective September 1, 2011.

7

defect, or intoxication is known by the actor to be unable to make reasonable decisions; or (D) given solely to detect the commission of an offense." Tex. Penal Code Ann. § 1.07(19) (West 2011). Under the Penal Code's definition, an "owner" includes a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor. Tex. Penal Code Ann. § 1.07(35) (West 2011). The term "possession" also is defined, as "actual care, custody, control or management." Tex. Penal Code Ann. § 1.07(39) (West 2011)

As evidence the building owner lacked authority to consent to the bank's entry onto the premises, Calahan points out the owner's eviction proceeding was not completed. But under the Penal Code's definitions, he was nonetheless an owner because he held title to the property, and because he had a greater right to its possession than "the actor," who under these facts would be Calahan.[3] *See Mackay v. State,* No. 01-06-01051-CR, 2008 Tex.App. LEXIS 1078, at *6-7 (Tex.App.—Houston [1st Dist.] Feb. 14, 2008, pet. ref'd) (mem. op., not designated for publication); *Kizzy v. State,* No. 14-07-00252-CR, 2009 Tex.App. LEXIS 4766, at *8-9 (Tex.App.—Houston [14th Dist.] June 25, 2009, pet. ref'd) (mem. op., not designated for publication) (both addressing penal code definition of "owner"). Under the undisputed facts, the building owner's consent to the bank's entry was effective. Calahan was not asked to commit a criminal trespass.

---

[3] The Penal Code defines "actor" to mean "a person whose criminal responsibility is in issue in a criminal action." Tex. Penal Code Ann. § 1.07(2) (West 2011).

In response to the bank's no-evidence motion, Calahan produced documents showing that the management company owned by the construction company's president was no longer the general partner of the company at the time of the repossession and the president was instead a limited partner with an interest of 29%. Calahan argues this evidence tends to show she could not have given effective consent to enter the premises at that time.

But, like that of the building owner, under the Penal Code definitions, the consent given by the company president was effective to authorize the bank's entry of the building. Whatever the limits on her authority as a limited partner under the limited partnership agreement, she had possession of the premises through her possession of the key, and she had a greater right to its possession than "the actor," who, again, under the hypothetical criminal prosecution, would be Calahan. *See Mackay,* 2008 Tex.App. LEXIS 1078, at *6-7; *Kizzy,* 2009 Tex.App. LEXIS 4766, at *8-9. Under these undisputed facts as well, her consent was effective, relieving Calahan of any risk of guilt of criminal trespass. *See Ed Rachal Found.*, 207 S.W.3d at 332-33; *Ritz-Carlton Hotel Co.,* 961 S.W.2d at 465 (both applying similar analysis to *Sabine Pilot* claims).

Because the summary judgment record contains no evidence that Calahan was forced to choose between risking criminal liability or being discharged, the trial court did not err by granting summary judgment. We overrule Calahan's contention and affirm the trial court's judgment in favor of the bank.

James T. Campbell
Justice