

# Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00562-CV

James D. **SCUDDAY**,
Appellant

v.

Austin **KING**, Tierra Linda Ranch Homeowners Association, Jerry Adams, Bob Dockey, Mary LaFrance, Tammy Haney, Denise Chambers and Dimas Lopez,
Appellees

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 14446
Honorable Albert D. Pattillo, III, Judge Presiding

Opinion by:   Beth Watkins, Justice

Sitting:   Rebeca C. Martinez, Chief Justice
   Luz Elena D. Chapa, Justice (not participating)
   Beth Watkins, Justice

Delivered and Filed: June 22, 2022

AFFIRMED

Appellant James D. Scudday appeals the trial court's orders granting summary judgment in favor of appellees Austin King, Tierra Linda Ranch Homeowners Association ("the HOA"), Jerry Adams, Bob Dockey, Mary LaFrance, Tammy Haney, Denise Chambers, and Dimas Lopez and denying Scudday's competing motions for summary judgment. We affirm the trial court's orders.

## BACKGROUND

The HOA is a nonprofit corporation that maintains the common areas of Tierra Linda Ranch, a residential community in Gillespie County. In 2012, the HOA hired Scudday to work as a ranch manager. Haney, Chambers, and Lopez also worked for the HOA, and Scudday was their supervisor. King, Adams, Dockey, and LaFrance were homeowners in Tierra Linda Ranch and members of the HOA.

Adams joined the HOA's board of directors in January of 2015. Shortly after he assumed his duties, both Chambers and Haney approached him "with allegations of sexual harassment and a hostile work environment caused by Scudday." Adams told King and Dockey, who were also board members at that time, about these allegations. Adams, King, and Dockey discussed "the possible need for an investigator to look into" the issue.

Chambers approached Adams again with similar allegations "[i]n the first part of April" 2015. Around the same time, LaFrance also contacted Adams and reported that Chambers had made the same allegations to her. When Adams told LaFrance that he was considering hiring an outside investigator to interview Chambers, Haney, and Lopez, LaFrance offered to perform those interviews herself. After Adams agreed to LaFrance's offer, LaFrance interviewed Haney, Chambers, and Lopez about Scudday's workplace behavior and prepared written statements ("the LaFrance statements") based on those interviews. The LaFrance statements indicated that Scudday had made sexual comments to both Chambers and Haney and had showed them a video of baboons having sex. Chambers, Haney, and Lopez later signed affidavits stating that, apart from corrections not relevant here, the statements accurately reflected what they had told LaFrance. On April 25, 2015, Adams again met with King and Dockey to discuss the allegations against Scudday.

On April 27, 2015, Adams presented the LaFrance statements to the entire HOA board,[1] which at that time consisted of King, Adams, Dockey, and Marcia Barrett. The HOA's attorney, who also attended the meeting, told the board members that the conduct described in the LaFrance statements constituted sexual harassment. During that meeting, the HOA board voted unanimously to fire Scudday.

After the HOA fired him, Scudday sought unemployment benefits. The Texas Workforce Commission initially denied his claim, and Scudday appealed. The TWC appeals tribunal's findings and conclusions noted the HOA "discharged [Scudday] because it determined that he sexually harassed two female employees under his supervision." However, because the HOA did not have a sexual harassment policy "notifying employees including [Scudday] as to what type of behavior was prohibited or considered to be sexual harassment," the TWC determined Scudday "was not made aware that his behavior could jeopardize his job." Based on this finding, the TWC determined that Scudday's "actions did not constitute misconduct connected with the work," and it reversed its denial of his claim for unemployment benefits.

In 2016, Scudday sued the HOA, King, Adams, Chambers, Haney, Lopez, and LaFrance for tortious interference with employer-employee relationship, defamation per se, breach of contract, and invasion of privacy. He also sought a declaration "that he has not sexually harassed any employee of Tierra Linda Ranch [and] has not committed the offense of sexual harassment." On October 23, 2019, Scudday filed a supplemental petition that added Dockey as a defendant and asserted that King, Adams, and Dockey had committed ultra vires acts and fraudulently concealed Dockey's participation in the events leading up to Scudday's termination. Appellees asserted several affirmative defenses to Scudday's claims, including contentions that Scudday's claims

---

[1] When Adams presented the LaFrance statements to the board, they were unsigned, and Chambers, Haney, and Lopez had not yet executed their affidavits adopting the statements.

against Dockey were barred by limitations; that King, Adams, Dockey, and LaFrance were entitled to volunteer immunity; and that the individual defendants were entitled to absolute and/or qualified immunity.

Appellees sought traditional and no-evidence summary judgment on each of Scudday's claims and some of their own affirmative defenses. Scudday sought traditional summary judgment on his claim for declaratory judgment and traditional and no-evidence summary judgment on LaFrance's defense of volunteer immunity. He also asked the trial court to take judicial notice of several issues.

On August 10 and 11, 2020, the trial court signed orders granting appellees' motions for summary judgment, denying Scudday's motions, and denying Scudday's judicial notice requests. In the order granting appellees' motion for summary judgment on Scudday's declaratory judgment claim, the trial court awarded appellees attorney's fees "in an amount to be determined at a later hearing." After Scudday moved to strike the award of attorney's fees, appellees nonsuited their fee claim. The trial court signed an order granting appellees' nonsuit "without prejudice" and specifying, "Following the Court's previous summary judgments, this Notice of Non-Suit Without Prejudice is a final order for the purposes of appeal." Scudday timely filed this appeal.

### ANALYSIS

In seven issues that we construe as three, Scudday argues the trial court erred by granting summary judgment for appellees and denying his competing motions, permitting appellees to nonsuit their claim for attorney's fees, and overruling his evidentiary objections.

### *Evidentiary Issues*

In his sixth issue, Scudday argues the trial court abused its discretion by overruling his objections to appellees' summary judgment evidence. Because this issue will affect our analysis of the summary judgment record, we address it first. *See Hilderbran v. Tex. Sw. Council, Inc., Boy*

*Scouts of Am.*, No. 04-20-00112-CV, 2021 WL 2211353, at \*4 (Tex. App.—San Antonio June 2, 2021, no pet.) (mem. op.). We may not reverse a judgment based on an evidentiary ruling unless the ruling was an abuse of discretion that probably caused the rendition of an improper judgment. *Id.*

While Scudday contends he "detailed his objections with clarity" below, his appellate brief does not identify either the challenged evidence or the objections he raised to that evidence. *See* TEX. R. APP. P. 38.1(i); *Mitchell v. Berry*, No. 05-06-01328-CV, 2007 WL 4111923, at \*7 (Tex. App.—Dallas Nov. 20, 2007, pet. denied) (mem. op.). Additionally, while he contends the trial court erred by refusing to strike the challenged evidence, he does not explain why those rulings were an abuse of discretion or probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 38.1(i), 44.1; *Hilderbran*, 2021 WL 2211353, at \*4 n.2. Because Scudday's brief therefore presents nothing for our review on his evidentiary complaints, we do not reach this issue. *See Ruffin v. Sanchez*, No. 04-16-00759-CV, 2017 WL 4014651, at \*1 (Tex. App.—San Antonio Sept. 13, 2017, no pet.) (mem. op.).

### Summary Judgment Issues

In his first, second, third, fourth, and seventh issues, Scudday argues the trial court erred by granting summary judgment in favor of appellees and denying his competing motion for summary judgment on his declaratory judgment claim. He does not challenge the trial court's denial of his motion for summary judgment on LaFrance's defense of volunteer immunity.

### Standard of Review

The trial court signed orders granting appellees both traditional and no-evidence summary judgment. In reviewing an order granting a motion for summary judgment, we consider only the "summary judgment record"—the motion, the response, replies and briefs in support of the motion and response, and the evidence attached to those filings. TEX. R. CIV. P. 166a(c), (i); *Wilson v.*

*Burford*, 904 S.W.2d 628, 628–29 (Tex. 1995) (per curiam). Because the trial court's orders do not specify the reasons for its rulings, we must affirm if any of the grounds appellees asserted below are meritorious. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

We review a no-evidence summary judgment under a legal sufficiency standard, viewing the evidence in the light most favorable to the non-movant and disregarding all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). We will affirm a no-evidence summary judgment if: "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Id.* at 751 (internal quotation marks omitted); *see also* TEX. R. CIV. P. 166a(i). To defeat a no-evidence motion for summary judgment, the non-movant must present more than a scintilla of evidence to raise a genuine issue of material fact on the challenged issue. *King Ranch*, 118 S.W.3d at 751. "Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact." *Id.* (internal quotation marks omitted).

A traditional summary judgment movant must show it is entitled to judgment as a matter of law because there is no genuine issue of material fact to be resolved by a factfinder. TEX. R. CIV. P. 166a(c); *Lightning Oil*, 520 S.W.3d at 45. A defendant shows it is entitled to traditional summary judgment on the plaintiff's claims by "conclusively negat[ing] at least one of the essential elements of a cause of action or conclusively establish[ing] an affirmative defense[.]" *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). A plaintiff who seeks traditional summary judgment on his own affirmative claim must conclusively prove all essential elements of that claim. *Compass Bank v. Durant*, 516 S.W.3d 557, 565 (Tex. App.—Fort Worth 2017, pet.

denied). We consider the evidence in the light most favorable to the non-movant and indulge every reasonable inference in its favor. *Lightning Oil*, 520 S.W.3d at 45.

When both sides move for summary judgment on the same issue and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Tex. Mut. Ins. Co. v. PHI Air Med., LLC*, 610 S.W.3d 839, 846 (Tex. 2020). Here, the only issues on which the parties filed competing motions for summary judgment are Scudday's request for declaratory relief and LaFrance's affirmative defense of volunteer immunity.

*Threshold Issues*

Before addressing the substance of the summary judgment record, we note that Scudday argues the trial court improperly placed the summary judgment burden on him as the non-movant. Scudday contends that "[e]very traditional and no-evidence summary judgment filed by Appellees were based on various pled or unpled affirmative defenses." However, the record shows that while appellees sought—and the trial court granted—traditional summary judgment on some of their affirmative defenses, appellees also sought and obtained no-evidence and traditional summary judgment on the required elements of Scudday's own claims. As noted above, appellees could properly shift the summary judgment burden to Scudday by: (1) identifying essential elements of Scudday's claims that were not supported by any evidence; or (2) presenting evidence that either conclusively negated at least one essential element of each of Scudday's claims *or* conclusively established all the elements of an affirmative defense. TEX. R. CIV. P. 166a(c), (i); *Fernandez*, 315 S.W.3d at 508; *Romo v. Tex. Dep't of Transp.*, 48 S.W.3d 265, 269 (Tex. App.—San Antonio 2001, no pet.).

Scudday also argues that because the trial court denied his requests to take judicial notice of certain issues,[2] it necessarily found that disputed issues of fact existed and therefore should have denied appellees' motions for summary judgment. A trial court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." TEX. R. EVID. 201(b). "[A]ssertions made by an individual, even under oath, are not the type of facts that are capable of accurate and ready determination by a source whose accuracy cannot reasonably be questioned." *O'Quinn v. Hall*, 77 S.W.3d 438, 447 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (alteration in original). In contrast, a "genuine issue of material fact exists," and will preclude the granting of summary judgment, "when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Vause v. Liberty Ins. Corp.*, 456 S.W.3d 222, 226 (Tex. App.—San Antonio 2014, no pet.) (internal quotation marks omitted). Unlike judicial notice, a trial court may grant summary judgment based on an individual's factual assertions made in deposition testimony, discovery responses, affidavits, and stipulations of the parties. *Compare* TEX. R. CIV. P. 166a(c), *with O'Quinn*, 77 S.W.3d at 447.

After reviewing Scudday's judicial notice requests, we conclude he did not show that the matters addressed by those requests were either "generally known within the trial court's territorial jurisdiction" or capable of being "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." TEX. R. EVID. 201(b), (c)(2); *O'Quinn*, 77 S.W.3d at 447. The trial court therefore did not err by denying Scudday's requests to take judicial notice of those

---

[2] Scudday asked the trial court to judicially note that: (1) he was a private figure; (2) he was not an at-will employee; (3) an internal HOA board operating manual was in effect on the day he was fired; and (4) he did not sexually harass any HOA employees.

issues. However, we reject Scudday's suggestion that this result, standing alone, necessarily shows that the deposition testimony, discovery responses, affidavits, and other summary judgment evidence raised a genuine issue of material fact to defeat appellees' motions for summary judgment on Scudday's claims. *See* TEX. R. CIV. P. 166a(c), (i). We must therefore examine the summary judgment record to resolve Scudday's appellate complaints. *See* TEX. R. CIV. P. 166a(c), (i); *Wilson*, 904 S.W.2d at 628–29.

## *Breach of Contract*

To support his breach of contract claim, Scudday bore the burden to show: (1) the existence of a valid, enforceable contract; (2) he performed or tendered performance under the contract; (3) appellees breached the contract; and (4) Scudday was injured by the breach. *See, e.g.*, *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied). In Texas, all employment is presumed to be terminable at-will "absent an unequivocal agreement" to the contrary. *Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332 (Tex. 2006) (per curiam); *Midland Judicial Dist. Cmty. Supervision & Corr. Dep't v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002) (per curiam). The Texas Supreme Court has "long held firm to the principle that . . . an at-will employee may be fired for a good reason, a bad reason, or no reason at all." *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 660 (Tex. 2012). Because "the promise of continued employment is illusory" in at-will employment, such an arrangement "cannot form the basis of an enforceable contract." *Id.*

## *Application*

Appellees sought both traditional and no-evidence summary judgment on Scudday's breach of contract claim. We consider their no-evidence arguments first. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017).

Scudday argues King, Adams, and the HOA breached a valid employment contract by wrongfully terminating him without cause. In their no-evidence motion for summary judgment, appellees argued, "There is no evidence of a contract" and "[t]here is also no evidence that the [HOA], King, or Adams breached any alleged employment contract[.]" These assertions challenged two specific elements of Scudday's claim: the existence of a contract and whether appellees breached the contract. TEX. R. CIV. P. 166a(i). Because the motion challenged specific elements of Scudday's breach of contract claim against the HOA, King, and Adams,[3] it shifted the burden to Scudday to present more than a scintilla of evidence to support those elements. *See id.*; *Trejo v. Laredo Nat'l Bank*, 185 S.W.3d 43, 46–47 (Tex. App.—San Antonio 2005, no pet.).

In response to appellees' no-evidence motion, Scudday presented the letter in which the HOA offered him the ranch manager position, which was signed by both the HOA and Scudday. Scudday argued the letter satisfied the required elements of an enforceable contract. He also pointed to deposition testimony in which Adams referred to the letter as a contract, and he noted that the HOA's Board Operating Procedures stated the HOA "provides a continuing Employment Agreement for the Ranch Manager based on satisfactory job performance." He further noted that the offer letter stated he was to receive an annual salary and a yearly performance review and that the Board Operating Procedures distinguished between "full time salaried" employees like Scudday and "at will" employees paid by the hour. Scudday argued that when read together, the offer letter and the HOA's Board Operating Procedures showed the parties' intent to remove his employment from at-will status. Scudday also argued he had constitutionally protected due process and equal protection interests in his continued employment.

---

[3] Appellees filed their motions for no-evidence summary judgment on Scudday's contract, defamation, and invasion of privacy claims before Scudday added Dockey as a defendant. We will address Scudday's claims against Dockey below.

An agreement to modify the general presumption of at-will employment "must be (1) expressed, rather than implied, and (2) clear and specific." *Friend v. CB Richard Ellis, Inc.*, No. 02-08-00306-CV, 2009 WL 417300, at *2 (Tex. App.—Fort Worth Feb. 19, 2009, no pet.) (mem. op.) (internal quotation marks omitted). "An employer's act of informing the employee of what his salary will be for the upcoming year is not in and of itself enough to indicate the employer's unequivocal intention to modify the at-will status of the employee." *Id.*; *see also D'Unger*, 207 S.W.3d at 332 ("Standing alone, an agreement to pay at a stated rate is not enough; if it were, there would be very few at-will employees."). Because nothing in the offer letter expressly, clearly, and specifically limited the HOA's right to terminate Scudday's employment, it is no evidence that the HOA intended to hire Scudday as anything other than an at-will employee. *See Friend*, 2009 WL 417300, at *2. As a result, the offer letter, standing alone, "cannot form the basis of an enforceable contract." *Safeshred*, 365 S.W.3d at 660.

Scudday argues that we are required to read the offer letter and the Board Operating Procedures together to interpret the parties' true intent. We note that Scudday did not present any evidence showing the Board Operating Procedures were in effect in 2012 when the HOA hired him. But even if we read the offer letter and the Board Operating Procedures together, we see nothing in those documents that "unequivocally indicate[s] a definite intent to be bound not to terminate [Scudday] except under clearly specified circumstances." *Montgomery Cty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998); *see also Almazan v. United Servs. Auto. Ass'n, Inc.*, 840 S.W.2d 776, 780–81 (Tex. App.—San Antonio 1992, writ denied). Those documents contain, at most, "[g]eneral comments that an employee will not be discharged as long as his work is satisfactory[.]" *Brown*, 965 S.W.2d at 502. Such comments "do not in themselves manifest" an intent to modify an at-will relationship absent a specific agreement about what "good reason" or "good cause" for termination means. *Id.* Because the evidence upon which Scudday relied below

does not express a clear, specific, unequivocal intent to limit the HOA's ability to terminate his employment in any meaningful way, Scudday did not present more than a scintilla of evidence to show either the existence or breach of an employment contract. *See Safeshred*, 365 S.W.3d at 660; *Williams v. First Tenn. Nat'l Corp.*, 97 S.W.3d 798, 802–03 (Tex. App.—Dallas 2003, no pet.). Additionally, while Scudday argued he had due process and equal protection rights to continued employment, he did not cite any authority that an at-will employee of a private employer has a constitutional interest in his continued employment; we have found none.[4]

Scudday also argues that when read together, the offer letter and the Board Operating Procedures amount to a "satisfaction contract" rather than an at-will employment contract. As support for this assertion, he cites a 1992 court of appeals opinion noting that "a contract by which one agrees to employ another as long as the services are satisfactory, or which is otherwise expressed to be conditional on the satisfactory character of the services rendered" may only be terminated if there is "a bona fide dissatisfaction or cause for discharge[.]" *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 659 (Tex. App.—Dallas 1992, no writ). Because *Zep* appears to be inconsistent with the Texas Supreme Court's later opinion in *Brown*, we decline to apply *Zep*'s analysis here. *Compare id.*, *with Brown*, 965 S.W.2d at 502.

For these reasons, we conclude the trial court did not err by granting no-evidence summary judgment for the HOA, King, and Adams on Scudday's breach of contract claim. *See* TEX. R. CIV. P. 166a(i); *Brown*, 965 S.W.2d at 502.

---

[4] In his brief, Scudday relies, in part, on a case involving civil service employees of Dallas County. *See County of Dallas v. Wiland*, 216 S.W.3d 344, 346 (Tex. 2007). There, the Texas Supreme Court determined that the language of Dallas County's employee manual granted those employees a constitutionally protected property interest in their employment. *Id.* at 353–54. The *Wiland* court noted, however, that "[f]or well over a century, the general rule in this State, as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Id.* at 347 (internal quotation marks omitted).

*Tortious Interference*

*Applicable Law*

To support a claim for tortious interference with a contract, a plaintiff must plead and prove: (1) the existence of a valid contract subject to interference; (2) the defendant willfully or intentionally interfered with the contract; and (3) the defendant's interference proximately caused actual damage to the plaintiff. *See Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). "Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference." *ACS Invs., Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). However, in both the trial court and this court, Scudday cited a Texas Supreme Court opinion recognizing a cause of action "for tortious interference with a contract of employment terminable at will." *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 688 (Tex. 1989).[5]

*Application*

Scudday argues King, Adams, Haney, Chambers, Lopez, and LaFrance tortiously interfered with his employment by inducing the HOA to fire him. In their no-evidence motion for summary judgment on this claim, appellees argued, "There is no evidence of a valid employment contract or that [appellees] willfully and intentionally interfered with this alleged contract" or that any alleged interference "proximately caused Scudday's injuries[.]" These challenges to specific elements of Scudday's tortious interference claim shifted the burden to Scudday to present more

---

[5] It is unclear whether *Sterner*'s holding on this point survived *Safeshred*'s later conclusion that an at-will employment arrangement establishes a relationship "that is not even contractual" and "cannot form the basis of an enforceable contract." *Compare Safeshred*, 365 S.W.3d at 660, *with Sterner*, 767 S.W.2d at 688; *see also El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421 n.6 (Tex. 2017) (noting that post-*Sterner* Texas Supreme Court analysis "suggested (without discussion) that *Sterner* . . . involved claims for interference with *prospective* business relations"). Because appellees have not argued either here or below that *Sterner* is no longer good law, we will assume *Sterner* controls on this point for the purpose of this appeal. *See, e.g.*, *Chavez v. Kan. City S. Ry. Co.*, 520 S.W.3d 898, 900 (Tex. 2017) (summary judgment movant bears the burden of showing it is entitled to judgment as a matter of law).

than a scintilla of evidence on those elements. TEX. R. CIV. P. 166a(i); *Trejo*, 185 S.W.3d at 46–47.

In his response to appellees' motion, Scudday argued "that the alleged act of interference was willful and intentional" because "the false and fabricated accusations [of sexual harassment] cannot be classified as anything less than willful and intentional." However, Scudday did not identify any evidence to support these assertions. Without specific guidance from the non-movant, the trial court "was not required to search the record for evidence raising a material fact issue," and a trial court does not err "when it does not consider summary judgment proof to which it was not directed." *Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.) (citing *Guthrie v. Suiter*, 934 S.W.2d 820, 826 (Tex. App.—Houston [1st Dist.] 1996, no writ)). Similarly, an appellate court reviewing a summary judgment is "not free to search the entire record, including materials not cited to or relied on by the trial court." *Id.* Because Scudday's summary judgment response did not identify any evidence to support his assertion of willful and intentional conduct, the trial court was not required to search the thirty-two attachments and exhibits Scudday included in his response for evidence raising more than a scintilla of evidence on that element, and this court is not free to do so. *See id.*; *see also* TEX. R. CIV. P. 166a, cmt. 1997 (providing that non-movant's response to no-evidence motion must "point out evidence that raises a fact issue on the challenged elements"); *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex. 1989).

For these reasons, we conclude the trial court did not err by granting appellees a no-evidence summary judgment on Scudday's tortious interference claim. *See* TEX. R. CIV. P. 166a(i); *Blake*, 123 S.W.3d at 525.

*Defamation Per Se*

*Applicable Law*

To prevail on a defamation claim, a plaintiff must plead and prove the defendant published a false statement of fact that defamed the plaintiff and that the defendant acted "with the requisite degree of fault regarding the truth of the statement." *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017). Where, as here, the plaintiff is a private individual, the "requisite degree of fault" is negligence—i.e., that the defendant knew or should have known the defamatory statements were false. *Id.* at 434, 440. While a defamation plaintiff ordinarily must also prove damages, he need not satisfy that element where the defamatory statement amounts to defamation per se. *Id.* at 434. "Defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed," such as "[a]ccusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct[.]" *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015).

*Application*

Appellees sought both traditional and no-evidence summary judgment on Scudday's claim for defamation per se. In their no-evidence motion, they argued there was no evidence that "any of the Defendants published a statement of fact which referred to Scudday, was defamatory, and false." They also argued there was "no evidence that with regard to the truth of the alleged defamatory statements, Defendants were acting with actual malice, were negligent, or were strictly liable." Because the motion challenged specifically identified elements of Scudday's defamation per se claim, it shifted the burden to Scudday to present more than a scintilla of evidence to support those elements. TEX. R. CIV. P. 166a(i); *Trejo*, 185 S.W.3d at 46–47.

As explained more fully below in our discussion of Scudday's declaratory judgment action, Scudday argued throughout this litigation that the sexual harassment allegations were false because

appellees could not show Haney and Chambers would prevail in a discrimination lawsuit on their claims of sexual harassment. However, Scudday's response to appellees' motion for summary judgment on his defamation claim did not deny that he engaged in the conduct that was interpreted as "sexual harassment" by Haney, Chambers, Lopez, the board members who voted to fire him, and the HOA's attorney. Additionally, Scudday's response did not point to any evidence showing that any of the appellees knew or should have known the allegations regarding his conduct were false. *See D Magazine*, 529 S.W.3d at 434, 440. Instead, he argued that he was not a public figure and that he therefore was not required to show appellees acted with actual malice. Because Scudday's response did not present any evidence to raise a genuine issue of material fact as to either the falsity of his alleged conduct or appellees' negligence, the trial court did not err by granting appellees' motion for no-evidence summary judgment on his defamation per se claim. TEX. R. CIV. P. 166a(i); *King Ranch*, 118 S.W.3d at 751.

## *Invasion of Privacy*

Scudday asserted a breach of privacy claim against the HOA, King, Adams, and LaFrance. "Texas recognizes three separate types of invasion of privacy: (1) intrusion upon seclusion or solitude or into one's private affairs; (2) public disclosure of embarrassing private facts; and (3) wrongful appropriation of one's name or likeness." *Doggett v. Travis Law Firm, P.C.*, 555 S.W.3d 127, 130 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). Scudday's response to appellees' motion for summary judgment specified that he alleged only intrusion upon seclusion and public disclosure of private facts.

### *Applicable Law*

To recover on a claim for intrusion upon seclusion, a plaintiff must plead and prove "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person." *Valenzuela v.*

*Aquino*, 853 S.W.2d 512, 513 (Tex. 1993); *Rodriguez v. Wal-Mart Stores, Inc.*, 52 S.W.3d 814, 822 (Tex. App.—San Antonio 2001), *rev'd in part on other grounds*, 92 S.W.3d 502 (Tex. 2002). Several of our sister courts have "held that an intrusion upon seclusion claim fails without evidence of a physical intrusion or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying." *Morales v. Barnes*, No. 05-17-00316-CV, 2017 WL 6759190, at \*5 (Tex. App.—Dallas Dec. 29, 2017, pet. denied) (citing opinions to this effect from the First, Fifth, Twelfth, and Fourteenth Courts of Appeals). "When assessing the offensive nature of the invasion, courts further require the intrusion to be unjustified or unwarranted." *Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex. App.—Tyler 2006, pet. denied).

To prevail on a claim for public disclosure of private facts, a plaintiff must show: "(1) publicity given to matters concerning [his] private life; (2) the publication would be highly offensive to a reasonable person of ordinary sensibilities; and (3) the matter publicized is not of legitimate public concern." *Polansky v. Sw. Airlines Co.*, 75 S.W.3d 99, 104–05 (Tex. App.—San Antonio 2002, no pet.).

*Application*

A.    Intrusion into seclusion

In their no-evidence challenge to Scudday's intrusion upon seclusion claim, appellees argued there was no evidence that: (1) they had intentionally intruded into Scudday's solitude, seclusion, or private affairs; or (2) any alleged intrusion would be highly offensive to a regular person. *See Valenzuela*, 853 S.W.2d at 513. Because appellees' motion challenged specific elements of Scudday's claim, it shifted the burden to Scudday to present more than a scintilla of evidence to support those elements. TEX. R. CIV. P. 166a(i); *Trejo*, 185 S.W.3d at 46–47.

Scudday's response to appellees' motion did not directly address the required elements of intrusion upon seclusion. However, the response pointed to evidence showing that after Scudday

- 17 -

was terminated, LaFrance spoke with Scudday's former employer, C.C. Burgess, and later shared details about that conversation with Adams. Scudday's evidence showed that while LaFrance told Burgess Scudday had been terminated, she "did not say why." Scudday's evidence also showed that Burgess refused to answer LaFrance's question about "how he would characterize Scudday, as honest or dishonest, etc." because "the law prevents him from saying much about [Scudday] without a threat of slander." Scudday also identified evidence which he contended showed appellees "gave LaFrance . . . unfettered access to personnel files and records after" Scudday was fired. The exhibit Scudday relied on for this contention consists of emails between LaFrance, Adams, and Haney about checks drawn on the HOA's bank account, as well as images of those checks. Nothing in the exhibit indicates that LaFrance had access to Scudday's personnel file or any HOA records other than the checks at issue.

Because the evidence Scudday identified in his summary judgment response does not refer to King in any way, it is no evidence that King participated in the actions about which Scudday complains. *See Robinson v. Brannon*, 313 S.W.3d 860, 867–68 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Additionally, even when viewed in the light most favorable to Scudday, this evidence would not allow reasonable and fair-minded people to conclude that LaFrance's single conversation with Burgess or her access to information about the HOA's checking account constituted an intentional intrusion by any of the appellees into Scudday's solitude, seclusion, or private affairs or that the purported intrusion would be highly offensive to a reasonable person. *Cf. Morales*, 2017 WL 6759190, at *4–5 (concluding "a single letter directed at [claimant's] employer" was insufficient to establish a prima facie case of intrusion on seclusion). Because Scudday therefore failed to present more than a scintilla of evidence on these challenged elements of his intrusion on seclusion claim, the trial court properly granted no-evidence summary judgment on that claim. TEX. R. CIV. P. 166a(i); *see King Ranch*, 118 S.W.3d at 751.

B.      Public disclosure of private facts

In their no-evidence challenge to Scudday's public disclosure of private facts claim, appellees argued Scudday could not present evidence that: (1) the HOA, King, Adams, or LaFrance publicized information about Scudday's private life; (2) any alleged publicity would be highly offensive to a reasonable person; or (3) any matter publicized was not of legitimate public concern. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473–74 (Tex. 1995). In response, Scudday identified evidence showing the HOA publicized the reason for his termination "ranch wide to the Homeowners at [the HOA]." We need not decide whether this publication disclosed information about Scudday's private life or would be highly offensive to a reasonable person, because Scudday failed to present evidence that the matter was not of legitimate public concern.

"The determination whether a given matter is one of legitimate public concern must be made in the factual context of each particular case, considering the nature of the information and the public's legitimate interest in its disclosure." *Id.* at 474. Here, although Scudday argued his termination and the reasons for it were not of legitimate public concern, he did not cite any evidence to support that argument. Instead, he cited a definition of "matter of public concern" that appeared in a former version of the Texas Citizens Participation Act. *See* Act of June 17, 2011, 82nd Leg., ch. 341, § 2 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE § 27.001(7)); *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 796 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020). Scudday argued that if "[t]he matter publicized was . . . of legitimate public concern," then appellees "were required to file a suit to dismiss under the Texas Citizens Participation Act, yet they have failed to do so." Scudday did not cite any authority to support his assertion that appellees' failure to seek dismissal under the TCPA raised a fact issue about whether the matter was "of legitimate public concern." Because Scudday did not present

more than a scintilla of evidence on that issue, the trial court did not err by granting a no-evidence summary judgment on his public disclosure of private facts claim. TEX. R. CIV. P. 166a(i).

*Declaratory Judgment*

Both Scudday and appellees sought summary judgment on Scudday's request for a declaration of "no sexual harassment as a matter of law" under the Uniform Declaratory Judgments Act. The trial court granted appellees' motion, denied Scudday's, and dismissed the declaratory judgment claim.

*Applicable Law*

The UDJA provides:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). A declaratory judgment is only appropriate "if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id.* (internal quotation marks omitted). Because a UDJA claim that seeks a declaration of "'what the law would be on a hypothetical set of facts'" is not ripe for adjudication, a trial court lacks subject matter jurisdiction to render such a declaration. *See Robinson v. Parker*, 353 S.W.3d 753, 755–56 (Tex. 2011) (quoting *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 444 (Tex. 1998)).

*Application*

Scudday argued the declaratory relief he sought would "'terminate a controversy or remove an uncertainty' in this case" by disposing of "the false and fabricated accusations of sexual harassment." He contended that the conduct described in the LaFrance statements was "not, as a matter of law, 'sexual harassment' as defined by statute, case law, or general usage" and therefore would not support a claim for sexual-harassment-based discrimination under Texas or federal law. In their response to Scudday's motion, appellees argued the requested declaration "will not resolve the controversy between Scudday and [appellees]." In their competing motion for summary judgment, appellees argued relief under the UDJA was improper because Scudday's claim did "not seek to construe a contract, statute, or other writing and because it [was] an improper attempt to seek a declaration of non-liability[.]"

Scudday's declaratory judgment action sought the construction of state and federal discrimination statutes. TEX. CIV. PRAC. & REM. CODE § 37.004(a). Nevertheless, the trial court did not err by concluding that the requested declaration would not resolve any disputes between these parties. *See Bonham*, 907 S.W.2d at 467. As to Scudday's breach of contract claim, we have already concluded that he did not present more than a scintilla of evidence that he was not an at-will employee. *See, e.g.*, *Williams*, 97 S.W.3d at 802–03. Because an at-will employee may be fired for any reason or no reason at all, a declaration regarding the accuracy of the sexual harassment allegations would not resolve Scudday's breach of contract claim. *See Safeshred*, 365 S.W.3d at 660.

As to his remaining claims, Scudday himself explicitly argued that the purportedly harassed parties had never filed a discrimination claim and that they were procedurally barred from doing so. Scudday's own arguments therefore affirmatively demonstrated that his declaratory judgment action asked the trial court to resolve the merits of a claim that was merely hypothetical. *See*

*Robinson*, 353 S.W.3d at 755–56; *S. Methodist Univ. v. Times Herald Printing Co.*, 729 S.W.2d 129, 131 (Tex. App.—Dallas 1987, no writ). The trial court lacked subject-matter jurisdiction to resolve that theoretical claim. *See, e.g.*, *Patterson*, 971 S.W.2d at 442; *see also McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 232 (Tex. 2001).

For these reasons, the summary judgment record shows Scudday's declaratory judgment claim did not present a justiciable controversy. *See Bonham*, 907 S.W.2d at 467. Because the trial court therefore lacked subject-matter jurisdiction to decide that claim, it did not err by denying Scudday's motion for summary judgment, granting appellees' competing motion, and dismissing Scudday's claim for declaratory judgment. *See* TEX. R. CIV. P. 166a(c); *cf. Green Tree Servicing, LLC v. Woods*, 388 S.W.3d 785, 791–92 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (recognizing that "matters concerning subject-matter jurisdiction" may be resolved through traditional summary judgment).

*Claims Against Dockey*

Although Scudday filed his original petition in January of 2016, he did not assert any claims against Dockey until October 23, 2019. Because appellees filed the motions for summary judgment we considered above prior to Dockey's appearance in this lawsuit, those motions did not seek relief on his behalf and therefore cannot support summary judgment in his favor. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *Hardaway v. Nixon*, 544 S.W.3d 402, 412 (Tex. App.—San Antonio, pet. denied). However, after Scudday sued Dockey, appellees filed an additional motion for summary judgment arguing the claims against Dockey were barred by limitations.

A defendant who seeks summary judgment on a limitations defense must conclusively establish the date the plaintiff's cause of action accrued. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 708 (Tex. 2021). "The limitations period on a cause of action begins to run when a

wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Id.* at 707–08 (internal quotation marks omitted). Here, appellees' motion argued the legal injury underlying Scudday's breach of contract, tortious interference, defamation, invasion of privacy, and declaratory judgment claims occurred on the date of his termination: April 27, 2015. Appellees noted that Scudday's defamation claim was subject to a one-year statute of limitations; his tortious interference and invasion of privacy claims were subject to a two-year statute of limitations; and his breach of contract and declaratory judgment claims were subject to a four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.002(a), 16.003(a), 16.051; *Eagle Oil*, 619 S.W.3d at 707–08. Because Scudday did not sue Dockey until more than four years after his termination, appellees argued the evidence conclusively showed Scudday's claims against Dockey were time-barred.

In response, Scudday did not dispute appellees' assertion that his causes of action accrued on the date of his termination or that he sued Dockey more than four years after the date of his legal injury. He argued, however, that his claims against Dockey were tolled by the doctrine of fraudulent concealment. To defeat appellees' motion on this ground, Scudday was required to produce more than a scintilla of evidence of: (1) an underlying tort; (2) Dockey's knowledge of the tort; (3) Dockey's use of deception to conceal the tort; and (4) Scudday's reasonable reliance on the deception. *See Draughon v. Johnson*, 631 S.W.3d 81, 88–89 (Tex. 2021); *United Healthcare Servs., Inc. v. First Street Hosp. LP*, 570 S.W.3d 323, 341 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). As support for these elements, Scudday argued the evidence showed that King, Adams, and Dockey concealed an allegedly ultra vires board meeting that occurred two days before his termination.

We conclude Scudday's evidence did not raise a genuine issue of material fact as to at least two elements of fraudulent concealment. *See King Ranch*, 118 S.W.3d at 751. Scudday argued the

evidence shows appellees used deception to conceal the allegedly ultra vires meeting because the HOA did not disclose the meeting in its March 18, 2016 responses to Scudday's first request for production. However, it is well-established that "a failure to disclose information does not constitute fraud unless there is a duty to disclose the information." *Bazan v. Munoz*, 444 S.W.3d 110, 117 (Tex. App.—San Antonio 2014, no pet.). Scudday did not present any evidence that Dockey was an agent of the HOA when it submitted the March 18, 2016 discovery responses,[6] and it is undisputed that Dockey was not a party to this lawsuit in either an individual or representative capacity at that time. Because Scudday did not present any evidence that Dockey had a duty to disclose anything in the HOA's discovery responses, he did not meet his burden to raise a fact issue about whether Dockey himself both "knew [Scudday] had been wronged and concealed that fact to deceive him." *See Shah v. Moss*, 67 S.W.3d 836, 846 (Tex. 2001).

Additionally, to toll limitations based on fraudulent concealment, Scudday was required to show he reasonably relied on appellees' representations. *See, e.g.*, *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 68 (Tex. 2011). "[R]eliance is not reasonable when information revealing the truth could have been discovered within the limitations period." *Id.* Here, the evidence attached to appellees' motion for summary judgment on limitations included affidavits that King and Adams signed in April of 2016. As appellees noted in their reply in support of their motion for summary judgment on limitations, King and Adams used those same affidavits as exhibits to a previous motion for summary judgment they filed on April 15, 2016—a date that fell within the statutes of limitations for all of Scudday's claims. Those affidavits state that prior to Scudday's termination, King and Adams "informed another Board Member, Bob Dockey about [the allegations against

---

[6] The evidence appellees presented in support of a different motion for summary judgment showed that Dockey served on the HOA's board of directors from January 1, 2014 until December 31, 2015.

Scudday] and we talked about the possibility of the Board hiring an investigator to look in to these allegations."

Scudday did not dispute that he received the King and Adams affidavits within the statutes of limitations on his claims. He argued, however, that because the King and Adams affidavits did not specifically mention the allegedly ultra vires meeting, he believed the affidavits referred only to email conversations between King, Adams, and Dockey. Scudday did not present any evidence or authority to support a conclusion that his belief was reasonable or that he could not have discovered the truth within the limitations period. *See id.* Moreover, even if the King and Adams affidavits were intended to conceal the allegedly ultra vires meeting, Scudday again did not present any evidence to support a conclusion that *Dockey himself* made any representations intended to deceive Scudday. *See Shah*, 67 S.W.3d at 846.

For these reasons, Scudday did not satisfy his burden to raise a genuine issue of material fact that fraudulent concealment tolled the statutes of limitation on his claims against Dockey. Accordingly, the trial court did not err by granting Dockey a traditional summary judgment on his limitations defense. *See* TEX. R. CIV. P. 166a(c); *Draughon*, 631 S.W.3d at 88–89.

*Ultra Vires Claims*

Like his fraudulent concealment claim, Scudday's claim that King, Adams, and Dockey committed ultra vires acts arose out of the pre-termination meeting. King, Adams, and Dockey sought traditional and no-evidence summary judgment on the ultra vires claim, and their motion primarily argued that the meeting did not constitute an ultra vires act. However, relying on section 20.002 of the Texas Business Organizations Code, they also argued Scudday lacked standing to assert an ultra vires claim.

Section 20.002, which applies to both for-profit and nonprofit corporations, provides:

> The fact that an act . . . is beyond the scope of the expressed purpose or purposes of the corporation or is inconsistent with an expressed limitation on the authority of an officer or director may be asserted in a proceeding . . . *by the corporation, acting directly or through a receiver, trustee, or other legal representative*, or *through members in a representative suit*, against an officer or director or former officer or director of the corporation for exceeding that person's authority[.]

TEX. BUS. ORG. CODE ANN. § 20.002(c)(2) (emphasis added). We have previously interpreted this provision as a rule of standing. *See Rio Grande H2O Guardian v. Robert Muller Family P'ship Ltd.*, No. 04-13-00441-CV, 2014 WL 309776, at *5 (Tex. App.—San Antonio Jan. 29, 2014, no pet.), *disapproved on other grounds by In re Lipsky*, 460 S.W.3d at 587.

In support of their motion, King, Adams, and Dockey presented the HOA's bylaws and articles of incorporation. These documents show the HOA is a nonprofit corporation and that its membership consists of "Owner[s] of record," which the bylaws define as "the person or persons, entity or entities, who own a Lot [in Tierra Linda Ranch] by virtue of a recorded deed to the fee, or by virtue of a recorded 'Contract for Deed.'" Because Scudday has never owned property in Tierra Linda Ranch, King, Adams, and Dockey argued the evidence conclusively showed he was neither a legal representative of the HOA nor a "member" who had standing to bring an ultra vires claim against an officer or director of the HOA. *See* TEX. BUS. ORG. CODE § 20.002(c); *see also* TEX. R. CIV. P. 166a(c).

In response, Scudday did not present any evidence that he had ever owned property in Tierra Linda Ranch or that he had ever served as a legal representative of the HOA. Because the summary judgment record therefore does not contain any evidence that raises a genuine issue of material fact on Scudday's standing to assert his ultra vires claims, the trial court did not err by granting summary judgment for King, Adams, and Dockey on that claim. *See* TEX. R. CIV. P. 166a(c); TEX. BUS. ORG. CODE § 20.002(c).

*Nonsuit*

In his fifth issue, Scudday argues the trial court abused its discretion by signing an order nonsuiting appellees' claim for attorney's fees because: (1) the trial court granted the nonsuit "without prejudice"; and (2) appellees "never affirmatively pled for attorney's fees" and therefore "never had a legally asserted claim to non-suit." "Parties have an absolute right to nonsuit *their own* claims, but not *someone else's* claims they are trying to avoid." *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 37 (Tex. 2008) (internal citations omitted). A litigant may nonsuit its own claim at any time before it "has introduced all of [its] evidence other than rebuttal evidence[.]" TEX. R. CIV. P. 162. When a litigant is entitled to a nonsuit, the trial court's order dismissing the claim is purely ministerial. *See, e.g.*, *Klein v. Hernandez*, 315 S.W.3d 1, 4 (Tex. 2010); *In re Greater Hous. Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (per curiam).

Scudday does not argue that appellees' nonsuit was an attempt to avoid any of his own claims, and he has not disputed that appellees filed their notice of nonsuit before they introduced evidence of their attorney's fees. *See* TEX. R. CIV. P. 162; *Ledbetter*, 251 S.W.3d at 37. He also does not cite any authority holding that a trial court abuses its discretion by signing an order nonsuiting a claim without prejudice under these circumstances. Scudday therefore has not shown the trial court abused its discretion by signing the order nonsuiting appellees' fee claim. *See Klein*, 315 S.W.3d at 4.

We overrule Scudday's fifth issue.

## CONCLUSION

We affirm the trial court's August 10, 2020 and August 11, 2020 orders to the extent that those orders: (1) grant appellees' motions for no-evidence summary judgment on Scudday's breach of contract, tortious interference, invasion of privacy, and defamation per se claims; (2) grant appellees' motions for traditional summary judgment on Scudday's ultra vires and

declaratory judgment claims and on appellee Dockey's limitations defense; and (3) deny Scudday's motion for summary judgment on his declaratory judgment claim. Because our disposition of these orders fully resolves this appeal, we need not consider Scudday's challenges to the portions of the trial court's orders that grant appellees' motions for traditional summary judgment on: (1) appellees' affirmative defenses of volunteer immunity, absolute immunity, and qualified immunity; and (2) Scudday's breach of contract, tortious interference, invasion of privacy, and defamation per se claims. *See* TEX. R. APP. P. 47.1.

Beth Watkins, Justice